HESLER *et al.* v. COLDRON.

No. 982.    Opinion Filed July 11, 1911.

(116 Pac. 787.)

NEWSPAPERS—"Newspaper of General Circulation"—Evidence. From the evidence in this case, the court holds that the Daily Legal News was a "newspaper of the county having general circulation

therein,'' within the contemplation of Wilson's Rev. & Ann. St. Okla. 1903, sec. 4006, and that the certificate required to be published by Wilson's Rev. & Ann. St. Okla. 1903, sec. 3901, was properly published therein.

(Syllabus by the Court.)

*Error from Oklahoma County Court; Sam Hooker, Judge.*

Action by C. D. Hesler and J. G. Hesler, partners, against P. A. Coldron. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

*G. A. Paul,* for plaintiffs in error.

*W. A. Smith,* for defendant in error.

TURNER, C. J. On December 15, 1908, C. D. Hesler and J. G. Hesler, partners under the firm name of the Legal News Publishing Company, plaintiffs in error, sued P. A. Coldron on his certain promissory note, dated October 26, 1908, for $25, payable to the order of the Legal News Publishing Company 30 days thereafter. For answer defendant pleaded a general denial and:

"That the Legal News Publishing Company is a fictitious name under which said plaintiffs are transacting business; that said designation does not show the names of the partners interested in such business; that the said plaintiffs have not filed with the clerk of the district court of Oklahoma county, Oklahoma, where the principal place of business of said plaintiffs is located, a certificate, stating the names in full of all the members of such partnership and their place of residence, and have not published the same once a week for four consecutive weeks in a newspaper published in the county of Oklahoma, state of Oklahoma."

Plaintiff replied:

"That they were such partners, operating under the name and style of the Legal News Publishing Company; that they filed a certificate of partnership with the clerk of the district court of Oklahoma county, and that they published said certificate for four consecutive weeks, as required by law, in the Daily Legal News, a newspaper of general circulation in Oklahoma county, Okla."

Upon the issues thus joined, proof of the filing of said cer-

tificate with the district clerk was made, also proof of publication thereof for four consecutive weeks in the Daily Legal News. There was no dispute that the Daily Legal News was a newspaper, published in Oklahoma county, and that the same had been continuously and uninterruptedly published there during the period of 52 consecutive weeks prior to the first publication of said certificate. The case turned upon the question whether said newspaper was one "having general circulation" in the county during that time, within the contemplation of Wilson's Stats. of Okla. § 4006, which reads:

"No legal notice, advertisement or publication of any kind required or provided by any of the laws of the territory of Oklahoma to be published in a newspaper, shall have any force or effect as such, unless the same be published in a newspaper of the county having general circulation therein, and which newspaper has been continuously and uninterruptedly published in said county during the period of fifty-two consecutive weeks prior to the first publication of the notice or advertisement:" etc.

The trial court, in sustaining a demurrer to the evidence, in effect held that it was not, and entered judgment accordingly. Plaintiffs bring the case here, and contend that in so holding the court erred, and that said publication was one having general circulation within the county at the time of said publication, within the contemplation of said statute. The testimony is undisputed, and proves that said Daily Legal News had been published since 1903, and more than 52 consecutive weeks prior to said first publication; that at the time the publication in question was running, and for one year prior thereto, it had a circulation of from 205 to 215, among bankers, merchants, lawyers, real estate agents, insurance agents, wholesale merchants, hardware merchants, physicians, and almost every class of business in the county; that it circulated in almost every town in the county, including Jones, Oklahoma City, Edmond, Luther, Harrah, and Spencer; that it was so circulating for one year prior to the 1st of October, 1908; that in addition to items of legal news it carried a list of the real estate transfers of each day, the mortgages, both real and chattel, appointments of agents, powers of attorneys filed in the reg-

ister's office, marriage licenses, building permits, charters from the Secretary's office at Guthrie, also news items of general interest.    It carried, besides court proceedings, short telegraphic dispatches of general interest.    Of the four copies of the paper introduced in evidence, one contained a telegraphic dispatch concerning the Cooper trial at Nashville; one concerning President Castro of Venezuela; and another concerning the illness of Governor Lillie.    We think the court erred, and that the evidence discloses that the publication in question was one of general circulation in the county and fell squarely within the terms of the statute.

In *Railton v. Lauder,* 126 Ill. 219, 18 N. E. 555, the question before the court was whether the Chicago Daily Law Bulletin was a newspaper of general circulation in Chicago.    Upon the affidavit of the publisher only: "That the Chicago Daily Law Bulletin is a secular newspaper published in the city of Chicago, Cook county; that it is in general circulation throughout the city and county, and the state of Illinois, among judges, lawyers, real estate dealers, brokers, merchants, and business men generally; that its circulation is confined to no particular class or calling in the community, but is in general circulation, and has been published for 30 years; that it is published and circulated every secular day in the week, and is a daily, secular newspaper; that while its columns are devoted largely to legal matters and court notices, yet it contains various advertising matter, confined to no one calling or trade; and that there is published in it also news and information of a general secular character"—and copies of the paper introduced in evidence, the court said:

"We are not prepared to say, from what appears in these numbers alone, that the sworn statements of the publisher are untrue, and must therefore hold the paper in question to be a secular newspaper of general circulation, within the meaning of the statute.    Section 5, c. 100; *Kerr et al. v. Hitt,* 75 Ill. 51."

In *Lynn v. Allen et al.,* 145 Ind. 584, 44 N. E. 646, 33 L. R. A. 779, 57 Am. St. Rep. 223, the notice in question was published in the Daily Reporter, and the question was whether said Reporter was a newspaper of general circulation, within the con-

templation of Burns' Rev. Stats. 1894, §§ 230 and 1299, so as to give the court jurisdiction. Under the evidence adduced and set forth in the opinion, wherein it was found that its circulation in Indianapolis was about 550 copies, and outside said city throughout the state about 2,500, the court held that it was, and said:

"By a 'newspaper of general circulation,' the Legislature certainly did not intend a newspaper read by all the people of the county. As a matter of fact every newspaper is, in greater or less degree, devoted to some special interest. No one, however, would claim that because a newspaper should, for example, be the organ of a certain political party, and especially devoted to the interests of that party, it would not therefore be a newspaper of general circulation. Yet such a newspaper is to a large extent, read only by the members of the political party whose doctrines are advocated and expounded in its columns. There is no doubt that, where a publication is devoted purely to a special purpose, it would be an unfit medium to reach the general public. A medical, literary, religious, scientific, or legal journal is professedly but for one class, and that class but a comparatively small part of the whole population; and it would be manifestly unjust, as well as against the letter and spirit of the statute, to use such a journal for the publication of a notice affecting the property or personal rights of citizens in general. The newspaper before us, however, is no such professional or class journal. While it is a law publication, in a certain sense, and of particular interest to the legal profession, yet its character, as shown by the evidence, makes it of general interest to the community at large, especially to .that part of the community likely to be concerned with matters in courts and other public business. Indeed, it would seem that this newspaper is quite as likely as any party or other paper of general circulation to reach the particular persons interested in the proceeding before the court; and, consequently, that the spirit of the statute is quite as well served as could be if the notice were published elsewhere. Its special purpose is to give the news of the courts, and to circulate this news generally amongst all those, who, whether of the legal profession or not, may be interested in such proceedings. We are, therefore, unable to see how the end proposed in the statute, namely, to reach by publication a party in interest in a suit in court, could be better attained than by publication in this newspaper."

We are therefore of opinion that the newspaper in question

was one of general circulation in the county, and for that reason the judgment of the lower court is reversed, and the cause remanded for a new trial.

DUNN, HAYES, and KANE, JJ., concur; WILLIAMS, J., not participating.