In re INITIATIVE PETITION NO. 341,
STATE QUESTION NO. 627.

No. 74409.

Supreme Court of Oklahoma.

June 19, 1990.

As Corrected June 21 and 22, 1990.

Frasier & Frasier by Thomas Dee Frasier, Tulsa, for protestants.

Andrews Davis Legg Bixler, Milsten & Price by John C. Andrews, John F. Fischer, Douglas C. McBee, Robert H. Henry, Atty. Gen. by Neal Leader, Asst. Atty. Gen., Oklahoma City, for proponents.

HODGES, Justice.

This protest challenges Initiative Petition No. 341, State Question No. 627 (Petition). Protestants, in their brief, make three objections: (1) The Petition is invalid on its face for the reason that it violates the first amendment of the Constitution of the United States; (2) The Petition is invalid on its face for the reason that it violates article IV, section 1, of the Oklahoma Constitution; and (3) The ballot title of State Question Number 627 does not comply with Okla.Stat. title 34, § 9 (Supp.1983). In the Amended Application, they also raise the issue of the sufficiency of publication. Also, in the reply brief, the protestants raise for the first time the validity of the signatures on the petition. Because this issue was not preserved in the application, we do not address it. After reviewing the protest *de novo*,[1] we reject protestants arguments.

Initiative Petition No. 341 would create a five member Ethics Commission (Commission). The Commission would have the power, subject to legislative approval, to "promulgate rules of ethical conduct for campaigns for elective state offices and for initiative and referenda, including civil penalties for violation of these rules," and to investigate and prosecute violations of the rules. The Legislature would have the power to veto, repeal, and modify rules promulgated by the Commission.

## I.

The protestants argue that this proposed constitutional amendment violates the first amendment of the United States Constitution. It is unconstitutional, they argue, because it gives the Commission the unfettered discretion to make rules; this

---

1. *See In re Referendum Petition No. 18, State* *Question No. 437,* 417 P.2d 295, 296 (Okla.1966).

discretion causes the Petition to be overly broad and also constitutes a prior restraint on the freedom of speech. Under Okla. Stat. title 34, § 8 (1981), this court will pass on the constitutionality of an initiative petition to prevent a costly and unnecessary election.[2] Because a determination of the constitutionality of the Petition could prevent a costly and unnecessary election, we address protestants' challenges.

 Freedom to associate as a political party[3] and political activities are protected by the first amendment.[4] But not all limits on these activities are unconstitutional.[5] To determine whether governmental action is constitutionally impermissible, we first must determine "whether it burdens rights protected by the First and Fourteenth Amendments."[6] If the action burdens those rights, then the government must show "that it advances a compelling [governmental] interest ... and is narrowly tailored to serve that interest."[7]

 A statute or, in this case, a constitutional provision is overbroad if it prohibits constitutionally protected conduct as well as conduct that states can constitutionally restrict.[8] The overbreadth doctrine is

an exception to two rules: (1) A litigant cannot assert the rights of third parties;[9] and (2) A litigant can only attack statutes as applied.[10] This doctrine developed from the recognition "that the very existence of some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected"[11] and "that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."[12] A prerequisite to an overbreadth challenge is that the law itself will create a "realistic danger" that first amendment protections will be compromised.[13] The Petition itself does not create this danger. The creation of the Commission and the delegation of authority does not, without more, violate the first amendment. Until rules or statutes which restrict conduct become effective, the doctrine is not applicable. It simply has no application in the present context.

We rejected a similar argument in *Walters v. Oklahoma Ethics Comm'n.*[14] There, Okla.Stat. title 74, § 4207(H) (Supp. 1986),[15] was attacked as being unconstitu-

---

**2.** *In re Initiative Petition No. 315, State Question No. 553,* 649 P.2d 545, 548 (Okla.1982); *In re Supreme Court Adjudication of Initiative Petitions in Norman, Oklahoma, Numbered 74–1 and 74–2,* 534 P.2d 3, 8 (Okla.1975).

**3.** *Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 214, 107 S.Ct. 544, 548, 93 L.Ed.2d 514 (1986). *See also Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979); *Williams v. Rhodes,* 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968).

**4.** *Eu v. San Francisco County Democratic Central Comm.,* 489 U.S. 214, 109 S.Ct. 1013, 1019–20, 103 L.Ed.2d 271 (1989).

**5.** *See Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

**6.** *Broadrick,* 413 U.S. at 613–15, 93 S.Ct. at 2916–18.

**7.** *Eu,* 109 S.Ct. at 1019–20.

**8.** *See Members of the City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798, 800, 104 S.Ct. 2118, 2125, 2126, 80 L.Ed.2d 772

(1984); *Broadrick,* 413 U.S. at 606–07, 615–16, 93 S.Ct. at 2912–13, 2917–18.

**9.** *Vincent,* 466 U.S. at 796, 104 S.Ct. at 2124; *Broadrick,* 413 U.S. at 610, 93 S.Ct. at 2914.

**10.** *Vincent,* 466 U.S. at 798, 104 S.Ct. at 2125; *Broadrick,* 413 U.S. at 610, 93 S.Ct. at 2914.

**11.** *Vincent,* 466 U.S. at 798, 104 S.Ct. at 2125.

**12.** *Id.* at 799, 104 S.Ct. at 2125.

**13.** *See Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983).

**14.** 746 P.2d 172 (Okla.1987).

**15.** Okla.Stat. title 74, § 4207(H) (Supp.1986), states:

In making a determination to dismiss a complaint or to proceed with an investigation or make a referral to the appropriate authority, the Commission may exercise such discretion as it deems necessary to provide fairness to the accused and to maintain confidence in the public officials and employees who are subject to the provisions of the Oklahoma Ethics Commission Act.

tionally vague for lack of standards. Section 4207 gave the Commission discretion to dismiss a complaint, proceed with an investigation, or refer the matter to the appropriate authority. The appellee argued that, because there were no articulated standards, the statute was unconstitutional. We held that the Commission did not have unfettered discretion because the Commission was restricted by the Constitution; the Commission's decisions, as administrative actions, had to have "a reasonable or rational basis;" and the Commission's authority could "not be used in an arbitrary and discriminatory manner." [16] Therefore, section 4207(H) was held to be constitutional.

Likewise, the proposed constitutionally created Commission would not have complete discretion because restrictions are imposed by the federal and state constitutions and restrictions are imposed on administrative agencies.[17] Further, the provision restricts the rule-making authority of the constitutionally created Commission. The Commission may make rules only after a public hearing. After the rule is promulgated, the Legislature may, by joint resolution, reject the rule. The Governor may then veto the joint resolution which would result in the resolution being treated as other bills or joint resolutions. After a rule is adopted, the Legislature can repeal or modify the rule. Any rule promulgated by the Commission would not become effective without legislative ratification.[18] Given the restrictions on the Commission's power, we hold that the Petition does not

give the Commission unfettered discretion in violation of the Constitution.

Protestants rely on *Secretary of State v. Joseph H. Munson Co., Inc.,*[19] which involved a statute limiting fund-raising expenses to 25% of the funds raised. The Court stated that "[w]here, as here, a statute imposes a direct restriction on protected First Amendment activity, and where the defect in the statute is that the means chosen to accomplish the State's objectives are too imprecise, so that in all its applications the statute creates an unnecessary risk of chilling free speech, the statute is properly subject to facial attack." [20] In the present case, there is no direct restriction on protected first amendment activity. Further, the mere creation of the Commission does not require any application of a state regulation or statute, let alone an application that would create an unnecessary risk of chilling free speech. Until the Commission exercises its rule-making authority, there can be no limitations on first amendment activities; and, even then, we will have to evaluate each rule after it becomes effective to determine whether it imposes any unconstitutional restrictions on first amendment rights.

Protestants apparently argue that the Petition's overbreadth constitutes a prior restraint on first amendment rights. The result in our overbreadth analysis, inherently rejects protestants' contention. However, we will specifically address whether the Petition constitutes a prior restraint.

■ The doctrine of prior restraints regulates certain activities in advance, as opposed to retrospectively punishing activi-

In 1989, the Oklahoma Ethics Commission Act, Okla.Stat. title 74, §§ 4200–4248.1 (Supp.1986), which created an Ethics Commission, was amended and renamed the Oklahoma Campaign Compliance and Ethical Standards Act. *See* Okla.Stat. title 74, § 4200 (Supp.1989). Like the 1986 act, the 1989 amendments provided for an Ethics Commission which would investigate and refer violations. Under both acts, the activity of political candidates and political parties and organizations are restricted by required actions or by prohibited actions.

16. *Walters,* 746 P.2d 176.

17. Okla.Stat. title 75, § 250.3 (Supp.1987), defines "agency" as "any constitutionally or statutorily created state board, bureau, commission, department, authority, public trust in which the state is a beneficiary, or interstate commission."

18. The rule-making procedures outlined in the Petition are similar to those contained in The Administrative Procedures Act, Okla.Stat. title 75, §§ 302–03 (Supp.1987).

19. 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984).

20. *Id.* at 967, 104 S.Ct. at 2852.

ties.[21] The doctrine is designed to prevent self-censorship.[22] A law restraining conduct "must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks."[23] As stated earlier, the Petition does not regulate any activities, it merely creates a Commission with the power to recommend rules to the Legislature, the power to investigate, and the power to prosecute. There is an insufficient nexus between the creation of the Commission and the proposed censorship risk to create a "real and substantial threat." The Petition does not prohibit, either prospectively or retrospectively, or "chill" any first amendment activities and is not unconstitutional.

Protestants rely on *City of Lakewood v. Plain Dealer Publishing Co.*,[24] which involved an ordinance prohibiting the placing of newsracks on public property without the mayor's prior approval. The ordinance did not establish any standards for the denial or approval of an application. The Court stated that "a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship."[25] The present case and *City of Lakewood* are dissimilar in several respects: (1) In the present case, protestants are challenging rule-making authority rather than licensing authority; (2) Unlike the Commission, the government official in *City of Lakewood* had total discretion to deny or grant the license; and (3) The Commission's rules do not become effective until ratified by the Legislature, and, in *City of Lakewood*, there was not a second level of review before the decisions became effective. Therefore, protestants' reliance is misplaced.

 The protestants apparently also argue that the Petition is unconstitutional because the government does not have a legitimate interest in constitutionally creating an Ethics Commission.[26] In support, the protestants cite *Eu v. San Francisco County Democratic Central Comm.*,[27] in which the Court stated: "If the challenged law burdens the rights of political parties and their members, it can survive constitutional scrutiny only if the State shows that it advances a compelling state interest...."[28] Before the state must demonstrate a compelling state interest, the protestants must show that the Petition burdens a constitutional right. Protestants have not met this burden. Protestants have not given any examples of an activity from which political participants would refrain under the Petition itself. The mere creation of an ethics commission does not burden any first amendment rights, and the Petition itself does not restrict any political activity.[29] Until some activity is restricted, a constitutional right is not impinged.

All governmental action must further a legitimate state interest;[30] the Petition does. Not only do states have a legitimate interest "in fostering informed and educat-

21. Blasi, *Toward a Theory of Prior Restraint: The Central Linkage,* 66 Minn.L.Rev. 11 (1981); Emerson, *The Doctrine of Prior Restraint,* 20 Law & Contemp.Probs. 648 (1955).

22. *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 757–58, 108 S.Ct. 2138, 2143–44, 100 L.Ed.2d 771 (1988).

23. *Id.* at 759, 108 S.Ct. at 2145.

24. *Id.* at 750, 108 S.Ct. at 2140.

25. *Id.* at 757, 108 S.Ct. at 2143.

26. Protestants argue that the State of Oklahoma does not have a legitimate interest in creating an Ethics Commission by the constitution. It is irrelevant whether the Commission is constitutionally or statutorily created; however, it must meet the same level of scrutiny to be constitutional.

27. 109 S.Ct. at 1013.

28. *Id.* at 1019.

29. The protestants urge that political activity is restricted because the Commission might promulgate rules which would unconstitutionally infringe on the first amendment. They then give several examples of rules which might be unconstitutional. It is premature for us to address the constitutionally of rules which have not yet become effective.

30. *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

ed expressions of the popular will in a general election," [31] they have a compelling state interest in "[m]aintaining a stable political system." [32]

In his brief, the Oklahoma Attorney General states one basis for establishing the Commission:

Water, Teapot Dome, Iran–Contra and County Commissioner scandals all remind us that not all public officials live up to their duty as public trustee. Indeed nearly a month goes by without news of a prominent public official being charged, indicted or convicted. To guard against such scandals, avoid conflict of interest, over reaching, and similar problems, many Oklahomans are looking to an administrative solution, such as the Ethics Commission proposal in State Question 627.

The "Oklahoma Campaign Compliance and Ethical Standards Act" [33] also sets out the state's legitimate interest in establishing a Commission and the regulation of campaigns. Those are:

1. That the operation of government be properly conducted so that public officials are independent and impartial and that a public office is not used for private gain other than the remuneration provided by law....

2. That the government attract those citizens best qualified to serve....

3. That the campaign process in this state operate to ensure that the people of this state elect their representatives in an informed and equitable manner and that qualified persons become candidates for public office with full confidence in the ability of the process to protect them from wrongful allegations of unlawful election practices.... [34]

Initiative Petition Number 341, State Question 627 is not overbroad and is not a prior restraint on first amendment rights. It is rationally related to a legitimate inter-est. Therefore, protestants' first amendment objections fail.

## II.

■ Protestants next object to the Petition on the grounds that it violates the separation of powers as defined by Oklahoma's constitution, which states:

The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial: and *except as provided in this Constitution,* the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others. [35]

This constitutional provision excepts other constitutional provisions. Because the Petition is a proposed constitutional provision, it does not fall under the limits of article IV, section 1. Article IV, section 1 does not prohibit a constitutional delegation of legislative authority to an agency.

In *City of Sand Springs v. Department of Public Welfare,* [36] we rejected the same argument. In that case, we held that a constitutional provision providing that the Department of Public Welfare was to carry out duties as prescribed by the legislature was valid. We reasoned that by passing article XXV, sections 2 and 4, the prohibition against delegation of legislative authority was removed under the exception clause of article IV, section 1. Likewise if State Question 627 is passed by a vote of the people, it will remove the separation of powers prohibition from actions of the Commission.

## III.

■ Next the protestants object to the ballot title submitted by the attorney general on the grounds that it does not contain

---

**31.** *Anderson,* 460 U.S. at 796, 103 S.Ct. at 1574. *See also Eu,* 109 S.Ct. at 1023; *Tashjian,* 479 U.S. at 220, 107 S.Ct. at 551.

**32.** *Eu,* 109 S.Ct. at 1022.

**33.** Okla.Stat. title 74, § 4200 (Supp.1988).

**34.** *Id.* at § 4201.

**35.** Okla. Const. art. IV, § 1 (emphasis added).

**36.** 608 P.2d 1139 (Okla.1980).

the gist of the proposition,[37] is deceptive and misleading, and is not written on an eighth-grade reading comprehension level. The records of the Secretary of State show that in December 1989, the Oklahoma State Department of Education certified the proposed ballot title to be "within the 8th Grade range of readability." We address protestants other objection to the ballot title, that is whether it contains the effect of the proposition and is deceptive and misleading. The proposed ballot title states:

> This measure would add a new Article XXIX to the State Constitution. It would create a five member Ethics Commission. The Chief Justice of the Supreme Court would appoint one member. The Governor would appoint one member. The Attorney General would appoint one member. The President Pro Tempore of the Senate would appoint one member. Also, the speaker of the House would appoint one member. No member could be from the same congressional district. No more than three persons from one political party could be members at the same time. The members could make rules for campaign ethics. The rules could be disapproved by the House and Senate. The Governor could veto the disapproval. The House and Senate could enact ethics laws. The Commission could also investigate violations. They could prosecute in District Court.

The attorney general's proposed ballot title sufficiently states the effect of the proposition; (1) the constitutional creation of a commission, the Ethics Commission, (2) the make-up of the Commission and the method of the appointments to the Commission, (3) the responsibilities and powers of the Commission, (4) the legislature's power to disapprove the rules promulgated by the Commission, and (5) the governor's power to veto the disapproval. Because the pro-

posed ballot title contains the effect of the proposition, it is not misleading.

Protestants argue that other details should be included in the ballot title. These details are not necessary to explain the effect of the proposition. In *Arthur v. City of Stillwater*,[38] this Court stated:

> The question must be specific, but need not include the proposition, from beginning to end. It is sufficient if enough is printed to reflect the character and purpose of the proposition. Generally, the requirement concerning submission of ballot propositions is that the question not be deceptive or misleading, and that it be free from uncertainty and ambiguity. The test is whether the voters are afforded an opportunity fairly to express their will, and whether the question is sufficiently definite to apprise the voters with substantial accuracy as to what they are asked to approve.

The proposed ballot title is substantially accurate and sufficient to apprise the voters of what they are asked to approve. Although the ballot title is substantially accurate, it can be made more precise.

Protestants reason that the ballot title does not contain the "gist of the proposition," in part, because it states that "[t]he Commission could also investigate violations. They could prosecute in District Court." Section 4 of the Petition states that "[t]he Ethics Commission shall investigate and, when it deems appropriate, prosecute in the District Court...." Because the phrase "when it deems appropriate" modifies the prosecutorial powers, those powers are discretionary. However, the Commission is required to investigate violations of the rules that it promulgates. Therefore, the ballot title should state that the Commission would investigate violations rather than could investigate violations.

---

**37.** In 1983, Okla.Stat. title 34, § 9 (1981) was amended to require that the ballot title explain "the effect of the proposition," rather than contain "the gist of the proposition." Okla.Stat. title 34, § 9(B) (Supp.1983) requires that:

 1. The ballot title shall not exceed one hundred fifty (150) words;

 2. The ballot title shall explain in basic words ... the effect of the proposition;
 3. The ballot title shall be written on the eighth-grade reading comprehension level....

**38.** 611 P.2d 637, 643 (Okla.1980).

Under title 34, section 10, we may "accept the substitute suggested" or "correct or amend the ballot title" for clarity.[39] Because the ballot title suggested by the protestants is well above the eighth grade reading level,[40] we reject it. We approve and adopt the following amended ballot title:

"Ballot Title
Initiative Petition No. 341
State Question No. 627

This measure would add a new article XXIX to the State Constitution. It would create a five member Ethics Commission. The Governor would appoint one member. The Chief Justice of the Supreme Court would appoint one member. The Attorney General would appoint one member. The President Pro Tempore of the Senate would appoint one member. Also, the Speaker of the House would appoint one member. No two members could be from the same congressional district. No more than three persons from one political party could be members at the same time. The members could make rules for campaign ethics. The rules could be disapproved by the House and Senate. The Governor could veto the disapproval. The House and Senate could enact ethics laws. The Commission would be required to investigate violations. It could prosecute in District Court.

SHALL THIS AMENDMENT BE APPROVED BY THE PEOPLE?

( ) Yes, for the amendment

( ) No, against the amendment."

■■■■■ Protestants also argue the Petition should be invalidated for the same reasons that they alleged the ballot title

was insufficient. It does not follow from the amendment of the ballot title for the purposes of clarification that the Petition is invalid.[41] Further, the test for determining the sufficiency of the ballot title does not apply to the required statement on the petition. Section 9 of title 34 [42] addresses the requirements for the ballot title while section 3 [43] sets out the requirements for the Petition. Section 9(B) specially states that it applies to the ballot title; it does not address the Petition. Even if section 9 could conceivably include the Petition, section 3 is the particular statute addressing the subject matter and is thus controlling.[44]

Section 9 requires that the ballot title explain "the effect of the proposition." Section 3 requires that the Petition contain "a simple statement of the gist of the proposition." By the use of different terms, it is presumed that the Legislature intended different tests to apply to the ballot title and the Petition's statement. "A simple statement of the gist of the proposition" requires less detail than an explanation of "the effect of the proposition." The list of detailed requirements set out in section 9 for the ballot title, as opposed to section 3's general requirement for the Petition's statement, is further proof that the Legislature did not intend for the Petition's statement to be as particular as the ballot title.

We have determined that the proposed ballot title was substantially accurate. Because the simple statement of the "gist of the proposition" was materially the same as the ballot title proposed by the attorney general, the statement on the Petition was substantially accurate also. The Petition is not invalid.

**39.** "[T]he court may correct or amend the ballot title before the court, or accept the substitute suggested, or may draft a new one which will conform to the provisions of Section 9 of this title." Okla.Stat. title 34, § 10 (Supp.1985).

**40.** In a letter from the Secretary of State filed December 20, 1989, the Oklahoma State Department of Education found the average readability level of the suggested ballot title to be 14.05, a college level.

**41.** *In re Initiative Petition No. 315,* 649 P.2d at 559 (supplemental opinion on rehearing).

**42.** Okla.Stat. title 34, § 9 (Supp.1983).

**43.** "A simple statement of the gist of the proposition shall be printed on the top margin of each signature sheet." Okla.Stat. tit. 34, § 3 (Supp. 1985).

**44.** *Williamson v. Evans,* 319 P.2d 1112, 1118–19 (Okla.1957).

IV.

██ Although not briefed, the protestants contest the sufficiency of the publication of the required notice under title 34, section 8.[45] The purpose of this section is to give sufficient notice that objections to a petition can be filed. Section 8 requires notice to be published "in at least one newspaper of general circulation in the state." The protestants concede that the notice was published in both *The Tulsa World* and *The Daily Oklahoman*. Therefore, the issue is whether either of these newspapers is one "of general circulation in the state."

In *Hesler v. Coldron*,[46] this Court listed some of the factors to be considered in determining whether a newspaper was one of general interest as: (1) the size of the circulation, (2) the geographic coverage, and (3) the subject matter of its content. The affidavit of Stephen Austin, Circulation Director of *The Tulsa World*, establishes that *The Tulsa World* carries items of interest to the general public, that it is distributed throughout the state, and that it has an average daily circulation of 135,-000. The publication in *The Tulsa World* is sufficient to meet the requirements of section 8. Because publication in only one newspaper of general circulation is required, it is not necessary to address both publications.

AMENDED BALLOT TITLE IS REMANDED TO SECRETARY OF STATE FOR SUBMISSION TO STATE ELECTION BOARD.

HARGRAVE, C.J., and LAVENDER, SIMMS, DOOLIN, KAUGER and SUMMERS, JJ., concur.

OPALA, V.C.J. and ALMA WILSON, J., concur in result.

OPALA, Vice Chief Justice, concurring in result.

I concur *only* insofar as the court declares today that the measure under consid-eration qualifies for submission to a vote of the electorate and modifies the ballot title. My commitment to the teachings of *Threadgill v. Cross*, 26 Okl. 403, 109 P. 558 [1910], remains undiminished. See *In re Initiative Petition No. 315 etc.*, Okl., 649 P.2d 545, 554–555 (Opala, J., concurring in result), where I call for the court's abandonment of present-day practice, first introduced into our jurisprudence by *In re Supreme Court Adjudication etc.*, 534 P.2d 3, 8 [Okl.1975], which allows the constitutional validity of a measure's contents to be challenged in advance of the initiative petition's adoption by the people.

ALMA WILSON, Justice, concurring in result:

The gist of the proposed constitutional amendment is that the proposed Ethics Commission will have legislative power to adopt rules; police power to enforce the rules; and adjudicatory power to determine and impose penalties for violation of the rules. These legislative, executive and judicial powers will extend to all persons involved in state election campaigns and initiative and referendum petition campaigns and to all persons serving as state officers or employees. The ballot title approved by this Court does not explain fully the gist of this proposition as required by 34 O.S.Supp.1989, § 9.

It is difficult to conceptualize or hypothesize the manner in which this proposed Commission of five part-time, non-compensated members will be able to exercise the powers of all three branches of our state government within the confines of our separation of powers, Okla. Const., art. IV, § 1. However, because this measure is only a proposal, consideration of issues on the merits is premature. *Threadgill v. Cross*, 26 Okla. 403, 109 P. 558 (1910).

Accordingly, I concur in the majority opinion only insofar as it approves of the

---

**45.** "Upon order of the Supreme Court it shall be the duty of the Secretary of State to forthwith cause to be published, in at least one newspaper of general circulation in the State, a notice of such filing and the apparent sufficiency or in-sufficiency thereof...." Okla.Stat. title 34, § 8 (1981).

**46.** 29 Okla. 216, 116 P. 787, 787–88 (1911).

proposition being submitted to the vote of the people.