Dear Representative Corn,
¶ 0 This office has received your request for an official Attorney General Opinion asking, in effect, the following questions:
 1. Does the phrase "admitted to the United States mails as paid second-class mail matter" as used in
25 O.S. 2001, § 106(2) now refer to periodicals publications, as defined by the federal postal regulations?
 2. Can a newspaper be a legal newspaper in more than one county in this State when the other county has at least one legal newspaper?
 3. If a newspaper of the county can only be a legal newspaper in one county, except where an adjoining county has no legal newspaper, is the newspaper of the county only a legal newspaper in the county where the original entry for periodicals mailing privileges is authorized?
 4. Is a newspaper that accepts legal notices required to publish legal notices in every edition or copy of the newspaper that is published on the day of the notice?
 I. Introduction
¶ 1 Your questions center around legal notices which are required by law to be published in a newspaper. Such notices are often necessary before further action can be taken in a legal matter.[1] You question whether newspapers from adjoining counties — or even adjoining states — can under most circumstances have the status of a "newspaper of general circulation in the county."
 II. Periodicals/Second-Class Mail
¶ 2 You first ask if the language "admitted to the United States mails as paid second-class mail matter" as used in 25 O.S. 2001, § 106[25-106] is the same as the term "periodicals" now used by the United States Postal Service. Section 106 establishes the requirements for "legal newspapers," i.e., those newspapers which wish to publish valid legal notices. That section reads as follows:
 No legal notice, advertisement, or publication of any kind required or provided for by the laws of this state to be published in a newspaper shall have force or effect unless published in a legal newspaper of the county. A legal newspaper of the county is any newspaper which, during a period of one hundred four (104) consecutive weeks immediately prior to the first publication of such notice, advertisement, or publication:
 1. has maintained a paid general subscription circulation in the county; and
 2. has been admitted to the United States mails as paid second-class mail matter; and
 3. has been continuously and uninterruptedly published in the county.
 If there is no legal newspaper in a county, then all legal notices, advertisements, or publications of any kind required or provided for by the laws of this state shall be published in a legal newspaper in an adjoining county of this state, which newspaper has general circulation in the county or political subdivision in which such notice is required.
 Nothing in this section shall invalidate the publication of such legal notices, advertisements, or publications in a newspaper which has moved its place of publication from one location in the county to another location in the same county without breaking the continuity of its regular issues for the requisite length of time, or the name of which may have been changed when said change of location was made as permitted by United States postal laws and regulations. Failure to issue or publish said newspaper for a period of fourteen (14) days due to fire, accident, or other unforeseen cause, or by reason of the pendency of mortgage foreclosure, attachment, execution, or other legal proceedings against the type, presses, or other personal property used by the newspaper, shall not be deemed a failure to maintain continuous and consecutive publication as required by the provisions of this section, nor shall said failure invalidate the publication of a notice otherwise valid. Failure to issue or publish a newspaper qualified to publish legal notices, advertisements, or publications of any kind, for a period totaling not more than fourteen (14) consecutive days during a calendar year shall not be deemed a failure to maintain continuous and consecutive publication as required by the provisions of this section, nor shall said failure invalidate the publication of a notice otherwise valid.
Id.
¶ 3 You indicate the term "second-class mail matter" is no longer used by the Postal Service. The Postal Service now uses the term "periodicals." You essentially want to know whether a newspaper which meets the "periodicals" requirements is still a "legal newspaper" under Section 106. The answer is yes.
¶ 4 The administrative rules governing the Postal Service state that "[p]eriodicals class mail is mailable matter consisting ofnewspapers and other periodical publications." 39 C.F.R. § 411.2 (2001) (emphasis added). That the two terms are the same is strengthened by a statement in the Domestic Mail Manual (hereinafter "DMM"), which states that "[e]ffective July 1, 1996, second-class mail was renamed Periodicals." United States Postal Service, Domestic Mail Manual, E211 All Periodicals (1.0) (2001).[2] Section 106 of Title 25 was last amended in 1983. Given that the Code of Federal Regulations has the force and effect of law, see Diehl v. Phillips Petroleum Co.,376 P.2d 203, 206 (Okla. 1962) (discussing taking judicial notice of the C.F.R.), and given that the Legislature indirectly incorporated these regulations by making reference to the Postal Service and its different categories, it logically follows that any changes in federal regulations in a field where the federal government has exclusive power would apply to Oklahoma statutes when such references are made. See Be-Mac Transport Co. v.Lairmore, 129 P.2d 192, 195 (Okla. 1942) (discussing when federal action is paramount to state action).
¶ 5 Accordingly, a newspaper which otherwise meets the requirements of 25 O.S. 2001, § 106[25-106] does not lose its "legal" status simply because the Postal Service now refers to the method of distribution as "periodicals" instead of "second-class matter," and the phrase "admitted to the United States mails as paid second-class mail matter" as used in Section 106 now refers to periodicals publications, as defined by the federal postal regulations.
 III. Legality In More Than One County
¶ 6 Your next two questions ask whether a newspaper can be a legal newspaper in more than one county in this State when the other county has at least one legal newspaper; if the answer to that question is no, whether a legal newspaper in a county is the legal newspaper only in that county where original entry for periodicals mailing privileges is authorized. Given that the discussion applies to both questions, we shall address them together.
¶ 7 The applicable statute provides for instances where a county does not have a legal newspaper:
 If there is no legal newspaper in a county, then all legal notices, advertisements, or publications of any kind required or provided for by the laws of this state shall be published in a legal newspaper in an adjoining county of this state, which newspaper has general circulation in the county or political subdivision in which such notice is required.
25 O.S. 2001, § 106[25-106].
¶ 8 However, the statute makes no mention of when a legal newspaper is present in a county.
¶ 9 A review of Section 106 reveals that there are four requirements which must be met before a newspaper can be a "legal" one: (1) it must have been published for 104 consecutive weeks immediately prior to the first publication of a legal notice; (2) it must have maintained "a paid general subscription circulation in the county"; (3) it must have been "admitted to the United States mails as paid second-class mail matter"; and (4) it must have been "continuously and uninterruptedly published in the county." Id. The 104-week requirement is self-explanatory and explained further in the last paragraph of Section 106. We shall examine the other requirements in turn.
A. Paid general subscription circulation in the county
¶ 10 The Oklahoma Supreme Court has addressed the term "general circulation" in this context before:
 By a "newspaper of general circulation," the Legislature certainly did not intend a newspaper read by all the people of the county. As a matter of fact every newspaper is, in greater or less degree, devoted to some special interest. No one, however, would claim that because a newspaper should, for example, be the organ of a certain political party, and especially devoted to the interests of that party, it would not therefore be a newspaper of general circulation. Yet such a newspaper is, to a large extent, read only by the members of the political party whose doctrines are advocated and expounded in its columns. There is no doubt that, where a publication is devoted purely to a special purpose, it would be an unfit medium to reach the general public. A medical, literary, religious, scientific, or legal journal is professedly but for one class, and that class but a comparatively small part of the whole population; and it would be manifestly unjust, as well as against the letter and spirit of the statute, to use such a journal for the publication of a notice affecting the property or personal rights of citizens in general.
Hesler v. Coldron, 116 P. 787, 788 (Okla. 1911) (quoting Linnv. Allen, 44 N.E. 646, 647 (Ind. 1896)).
See also Cox v. First Mortgage Loan Co., 48 P.2d 1060 (Okla. 1935) (first syllabus by the Court) (noting that a particular paper, "while in a sense a law publication, and of particular interest to the legal profession, yet whose character, as shown by the evidence, makes it of general interest to the community at large, and especially to that part of the community likely to be concerned with matters in courts, and other public business, and which circulates in different parts of the county and among different classes of people, is a newspaper of general circulation. . . .").
¶ 11 Therefore, unless the publication is one dedicated to such a special purpose that it would not reach the general public, it would be a newspaper of general circulation in the county. Whether any particular newspaper is of such nature, and whether the circulation is a paid circulation, is a question of fact beyond the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
B. Admitted to the United States mails as periodicals matter
¶ 12 Postal regulations state that a newspaper can qualify for mailing under the "Periodicals Classification Schedule" "if it meets all the requirements in sections 411.2 through 411.5 and the requirements for one of the qualification categories in sections 412 through 415." 39 C.F.R. § 411.1 (2001). As noted above, a newspaper (meeting certain qualifications) fits the definition of Periodicals. Id. § 411.2. Regulations also require, among other things, that Periodicals be issued on a regular basis (at least four times a year), have an issue date, and be numbered consecutively. Id. § 411.31. The newspaper must have a "known office of publication," defined as "a public office where business of the publication is transacted during the usual business hours." Id. § 411.4. "The office must be maintained where the publication is authorized original entry."Id.[3] Other requirements, in Section 412, require that at least 50% of the newspaper's circulation must be distributed to readers who have paid above a nominal rate. Id. § 412.31.[4] There are other requirements for other categories of periodicals which are not pertinent to your question.
¶ 13 If these requirements are met, the newspaper may be admitted to the United States mails as periodicals material. Whether these particular requirements are met constitute a question of fact beyond the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
C. Continuously and uninterruptedly published in the county
i. continuously and uninterruptedly
¶ 14 As 25 O.S. 2001, § 106[25-106] states, a newspaper can still be a legal publication even though it has not been published for 14 days, if the reason for non-publication is fire, accident or other unforeseen cause or because of legal proceedings against presses or other personal property used by the newspaper. Id.
ii. published in the county
¶ 15 The real question is whether an out-of-county newspaper is "published in the county." Neither the statute nor the postal regulations address what the term "published" means. As noted above, the newspaper must have a "known office of publication," defined as "a public office where business of the publication is transacted during the usual business hours." 39 C.F.R. § 411.4 (2001). "The office must be maintained where the publication is authorized original entry," id., and it "must also be the office where the publication's circulation records are kept or can be available for USPS examination." United States Postal Service, Domestic Mail Manual, E211 All Periodicals (4.2) (2001). An argument can be made that this office-location requirement is linked to the term "publication," in that it is the originating point; and since a newspaper can have only one originating point, it cannot be a legal newspaper in another county unless the other county has no legal newspaper of its own. Additionally, the Legislature made the "circulation" requirement separate from the "published" requirement. To simply equate the two terms would lead to the conclusion that the Legislature committed a vain act when it set forth two requirements which have the same meaning; we cannot subscribe to the commission of such a vain act. See Grand River Dam Auth. v. State,645 P.2d 1011, 1019 (Okla. 1982). Therefore, the word "publishing" or "published" implies something more than the act of "circulating"; it implies a point of origination which begins the act of circulating.
¶ 16 However, we need not decide the issue based solely on that analysis. In Oklahoma Journal Publishing Co. v. City of OklahomaCity, 620 P.2d 452 (Okla.Ct.App. 1979), a Court of Civil Appeals panel was charged with answering whether a newspaper whose principal offices and production facility were in another city could publish legal notices for Oklahoma City in light of an Oklahoma City ordinance which required legal notices to be put in a newspaper published in Oklahoma City. In discussing 25 O.S. 1971, § 106[25-106], the court said the following:
 The City contends that consideration of factors other than where the newspaper's office is located and where its content and form are determined are inappropriate and unnecessary. The place of mailing is a requirement found in [§] 106(c) that is not here present. Furthermore, it is merely a matter of convenience. The newspaper's distribution or circulation is not a proper consideration in determining the place of publication.
 Plaintiff proposes that this court adopt a balancing test utilizing the Ruble [v. Redden, 517 P.2d 1124
(Okla. 1973) (discussing whether a newspaper could publish legal notices if it was reproduced via printing presses outside the county)] factors enumerated above. Plaintiff contends that there is no requirement in Ruble that each and every factor must have existed to uphold its ruling, and where some factors militate towards a finding that publication has occurred in a specific locale and where other factors do not, the factors should be weighed to arrive at the ultimate determination.
 We reject plaintiff's definition as being inappropriate. A newspaper must be considered published in one readily ascertainable location. An examination of the relevant factors discerned from Ruble reveal the balance clearly in favor of holding The Oklahoma Journal being published in Midwest City because that is where its principal offices are located, that is where its content is determined, that is where it is edited, and that is the place from which the newspaper is disseminated.
 It is our opinion that in the context of Article II, Section 24 and Article IX, Section 4 of the Charter of the City of Oklahoma City, a newspaper is considered published at the location where the newspaper has its principal offices and where its form and content is determined. Therefore, The Oklahoma Journal, though an exemplary publication serving the Oklahoma City metropolitan area, must be considered published in the City of Midwest City and as such is not qualified to bid for the right to publish the legal notices, contracts, and municipal ordinances of the City of Oklahoma City.
Id. at 455.
D. Conclusion
¶ 17 Therefore, in the context of 25 O.S. 2001, § 106[25-106], a newspaper is considered "published" at the location where the newspaper is disseminated by admission to the mails and has its principal offices, and where its form and content is determined. Accordingly, a newspaper cannot be a legal newspaper in an adjoining county, unless the adjoining county has no legal newspaper as stated in Section 106. Also given the above discussion and definition of the word "publishing," a newspaper, in the absence of that same exception set forth in Section 106, can be a legal newspaper only in the county where it is admitted to the mails as periodicals material in accordance with Postal Service regulations. See 39 C.F.R. § 411.4 (2001), United States Postal Service, Domestic Mail Manual, E211 All Periodicals (4.1) (2001).
 IV. Multiple Editions Of Newspapers
A. Different Editions
¶ 18 You next ask whether a newspaper which publishes multiple editions daily is required to publish the same legal notices in each edition of the newspaper. Again, the statutes do not directly address this, but an analysis of Oklahoma statutes makes it apparent the answer to your question is yes.
¶ 19 As with your other questions, the answer lies in 25 O.S. 2001, § 106[25-106], which sets the requirements for a legal newspaper. As we pointed out above, Section 106 establishes four requirements which must be met before a newspaper can be a "legal" one: (1) it must have been published for 104 consecutive weeks immediately prior to the first publication of a legal notice; (2) it must have maintained "a paid general subscription circulation in the county"; (3) it must have been "admitted to the United States mails as paid second-class mail matter"; and (4) it must have been "continuously and uninterruptedly published in the county." Id. We answered the questions concerning "circulation" and "published" above. Those answers apply here as well.
¶ 20 We must next clarify what is meant by the word "edition" in your question, and how that term is differentiated from "issue." An "issue" of a newspaper is linked with the publication's stated frequency, i.e., how many times a periodical is published during a certain time period, e.g., per week, month or year. See United States Postal Service, Domestic MailManual, E211 All Periodicals (7.1) (2001). The term "issue" is contrasted with various "editions" of the same issue, when a newspaper which is published on a given day may contain portions which differ by demographics or time of day. See id. at (8.1). "Editions may differ in content, but not so much that they constitute separate and independent publications." Id. at (8.3).
¶ 21 However, the fact "editions may differ in content" does not in and of itself answer the question. To do that, we must look at other Oklahoma statutes dealing with the publication of legal notices. We get some guidance by another section, which reads:
 It shall not be necessary to publish a legal notice, when published in a daily newspaper or in a semiweekly newspaper, in every issue thereof, but it shall be sufficient to publish such notice one (1) day each week during the required period of publication. Said one (1) day of publishing legal notice each week may be any day of the week in which the newspaper is published but the said legal notice must appear in said newspaper on the same day each week during the required period of publication as it was originally published.
25 O.S. 2001, § 103[25-103] (emphasis added).
¶ 22 As noted above, the term "issue" refers to the frequency of publication, i.e., how many times it is published in a given time period. For example, a daily newspaper is defined by Section 101 of Title 25 as one which is "published as often as five (5) days in each week" — or, put another way, publishes at least five issues per week. Therefore, for purposes of this statute, we can equate the term "issue" with the word "day" as used in the statute.
¶ 23 When Section 103 is read with Section 101, it is apparent Section 103 does not require publication of a legal notice every day of the week; but when it is published, the notice must be published "one (1) day each week." Id. § 103. Use of the term "day" and equating that with the term "issue" leads us to conclude a legal notice must be published in each issue, regardless of how many copies or editions of that issue are published. Put another way, a legal notice must be published in each copy of a particular issue, regardless of how many different editions the newspaper circulates each day.
B. The Day of the Notice
¶ 24 Section 103 does place a restriction on the publication of legal notices in daily or semiweekly newspapers. As noted above, a legal notice may be published on "any day of the week in which the newspaper is published." 25 O.S. 2001, § 103[25-103]. However, "the said legal notice must appear in said newspaper on the same day each week during the required period of publication as it was originally published." Id. In other words, although there is no longer a "Thursday requirement,"[5] if a legal notice is published on Thursday, it must be published in Thursday issues during the time it is required to run. As an example, a legal notice could not be published on Thursday one week and Wednesday the next.
¶ 25 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The phrase "admitted to the United States mails as paid second-class mail matter" used in 25 O.S. 2001, § 106[25-106] now refers to periodicals publications, as defined by the federal postal regulations.
 2. A newspaper cannot be a legal newspaper in more than one county in this State when the other county has at least one legal newspaper. 25 O.S. 2001, § 106[25-106].
 3. Except where an adjoining county has no legal newspaper, the newspaper of a county is only a legal newspaper in the county where the original entry for periodicals mailing privileges is authorized. 25 O.S. 2001, § 106[25-106].
 4. A newspaper that accepts legal notices is required to publish legal notices in every edition or copy of the newspaper that is published on the day of the notice. 25 O.S. 2001, §§ 101[25-101], 103, 106.
W.A. DREW EDMONDSON Attorney General of Oklahoma
DAN CONNALLY Assistant Attorney General
[1] As examples, see 58 O.S. 2001, § 246[58-246], which requires in a probate proceeding publication of a notice of the petition, notice to creditors, and notice of final accounting, determination of heirship, distribution and discharge; 60 O.S. 2001, § 662[60-662], which requires the state treasurer to publish a list of unclaimed property; 19 O.S. 2001, § 444[19-444], which requires a board of county commissioners to publish "a full and complete report of all its official proceedings at each regular and special meeting." Typically, statutes — such as 2 O.S. 2001, § 9-205.1[2-9-205.1](D)(2) (dealing with the application for a license for an animal feeding operation) — require such notices to be published in a "newspaper of general circulation in the county." Id.
[2] As allowed by 5 U.S.C. § 552(a), the DMM has been incorporated into the Code of Federal Regulations,39 C.F.R. §§ 111.1, 111.4 (2001). Legislative rules duly promulgated in compliance with the procedures set forth in statute or the federal Administrative Procedures Act are binding rules which have the force and effect of law. See Appalachian Power Co. v.EPA, 208 F.3d 1015,1020 (D.C. Cir. 2000).
[3] This will be discussed in more detail below.
[4] As used in Section 412.31, nominal rate means:
 a. A token subscription price that is so low that it cannot be considered a material consideration;
 b. A reduction to the subscriber, under a premium offer or any other arrangements, of more than 50 percent of the amount charged at the basic annual rate for a subscriber to receive one copy of each issue published during the subscription period. The value of a premium is considered to be its actual cost to the publishers, the recognized retail value, or the represented value, whichever is highest.
39 C.F.R. § 412.33 (2001).
[5] Section 103 used to require that, in daily newspapers, legal notices had to be published on Thursdays. Semi-weekly newspapers were required to publish legal notices in the issue which was nearest the end of each calendar week. However, such requirements were eliminated in 1974. See Okla. Sess. Laws 1974, ch. 6, § 1.