2007 OK 48

**In re INITIATIVE PETITION NO. 384, State Question No. 731.**

**No. 103,548.**

Supreme Court of Oklahoma.

June 12, 2007.

Lee Slater, Oklahoma City, OK, for Petitioner/Proponent First Class Education for Oklahoma.

D. Kent Meyers, Roger A. Stong, Amanda L. Maxfield, Crowe & Dunlevy, Oklahoma City, OK, for Respondents/Protestants Dr. Keith Ballard, Tommy Anderson, Kathleen Brown, Lori A. Burchette, Billy F. Burns, Wesley Crain, Dr. June Ehinger, Vickie Foraker, Willa Jo Fowler, Rick George, Jere Gibson, Lisa G. Gigstad, Richard Gorman, Jeff Johnson, Matt G. Livingood, Glen Lonetree, Eva Martens, Michael Mullins, Jesse Nash, Roger E. Nelson, Eli Oswalt, Frances M. Percival, Beth Schieber, Rodney Schilt, James Smith, Dr. Dan Snell, Mary Spannagel, Don Tice, Edward L. Tillery, John D. Tuttle, Virgil Wells, Sharon Whepley, Joseph E. Williams, Dr. Shirley Woods, and Lesa L. Young.

COLBERT, J.

¶ 1 This initiative petition seeks to add a new section to title 70 of the Oklahoma Statutes. The proposed statute would require school districts to devote 65% of their "operational expenditures" to "classroom instructional expenditures." The petition was filed with the Secretary of State on March 7, 2006, and petition pamphlets containing signatures were submitted on June 5, 2006. The Secretary of State has certified that 165,157 signatures were counted. Because 1,463,758 votes were cast for the state office receiving the highest number of votes in the last general election, 117,101 signatures are necessary to submit the proposed legislation to a vote of the people. Upon receiving the certification by the Secretary of State, this Court found that the signatures submitted by the Proponent appear numerically sufficient and ordered that notice be published to allow anyone protesting the petition to respond. The Protestants filed their protest on August 23, 2006. They and the Proponent, First Class Education for Oklahoma, have fully briefed

their positions. The matter now stands submitted for this Court's review.

■■■ ¶ 2 The right to enact laws by a vote of the people through initiative petition is reserved in article V, section 1 of the Oklahoma Constitution. While this fundamental and precious right is zealously protected by this Court, it is not absolute. *In re: Initiative Petition No. 379*, 2006 OK 89, ¶¶ 16–17, 155 P.3d 32, 39–40. Any citizen can protest the sufficiency and legality of an initiative petition. Okla. Stat. tit. 34, § 8 (2001). Upon such protest, this Court must review the petition to ensure that it complies with the "parameters of the rights and restrictions [as] established by the Oklahoma Constitution, legislative enactments and this Court's jurisprudence." *Petition 379*, 2006 OK 89, ¶ 16, 155 P.3d at 39.

¶ 3 The proposed statute would read:

A. This Act shall be known as The First Class Education for Oklahoma Act.

B. A school district shall spend at least sixty-five per cent of its Operational Expenditures on Classroom Instructional Expenditures.

C. A school district that does not spend at least sixty-five per cent of its Operational Expenditures on Classroom Instructional Expenditures in fiscal year 2007 shall for fiscal year 2008 increase the percentage of its Operational Expenditures that it spends on Classroom Instructional Expenditures by at least two per cent each subsequent fiscal year until the school district spends at least sixty-five per cent of its Operational Expenditures on Classroom Instructional Expenditures as required by this Act.

D. A school district shall submit its proposed annual budget to the State Superintendent of Public Instruction who shall verify that the school district's planned Classroom Instructional Expenditures are in compliance with this Act. In addition, the required annual report from each district shall be amended to show the total Classroom Instructional Expenditures as a percentage of the total Operational Expenditures for the year then ended.

E. If the budget submitted pursuant to Section D of this Act indicates that a school district is unable to meet either the requirement prescribed in Section B or the requirement prescribed in Section C of this Act, the district's annual report shall show that it did not comply with this Act for a particular year. The school district may petition the Superintendent of Public Instruction for a one-year waiver from the requirements of Sections B and/or C of this Act. The Superintendent of Public Instruction shall notify the school district within thirty days after the submission of the waiver petition whether the Superintendent will grant, deny or grant in part the waiver request.

F. In determining whether or not to grant a full or partial waiver under Section E of this Act, the Superintendent of Public Instruction shall consider all of the facts and circumstances including, but not limited to, whether the costs of transportation services are demonstrably higher because of the geographic size of or the distribution of the students throughout the district.

G. The legislature shall determine under what circumstances and to what extent sanctions may be taken or applied against school districts that do not comply with the requirements of this Act.

H. The Superintendent of Public Instruction shall develop model plans to assist districts in meeting the requirements of this Act. In particular, it should be the goal of the Superintendent of Public Instruction and the State Board of Education, in administering The First Class Education for Oklahoma Act, to provide districts with the tools to meet the requirements of this Act. Nothing in this Act should be construed to require the consolidation of a district with another district or the closing or elimination of any school or school district.

I. For purposes of this Act, "Classroom Instructional Expenditures" means expenditures directly related to classroom instruction, including, but not limited to, instructional staff and instructional materials. "Instructional" shall include activities dealing directly with interaction between

students and teachers or other classroom and instructional personnel, special education instruction, tutors, books, classroom computers, general instruction supplies, instructional aides, libraries and librarians, class activities such as field trips, athletics, arts, music and multidisciplinary learning, and extra curricular activities including, but not limited to, drama, sports and band.

J. For purposes of this Act, "Operational Expenditures" means all expenditures made by a school district other than expenditures for capital construction or debt or bond payments, including but not limited to the payment of interest on debt or bonds, and expenditures for facilities' leases and facilities' rental payments.

¶4 The Protestants contend this initiative petition is fatally flawed because the proposed statute would violate provisions of Oklahoma's constitution and because the "gist," the description of the proposed statute at the top of each signature page, is misleading and does not sufficiently inform the voter of the proposal. Because we conclude that the gist is legally insufficient, we will refrain from addressing the constitutional issues.[1] *State ex rel. Fent v. State ex rel. Okla. Water Res. Bd.*, 2003 OK 29, ¶12, 66 P.3d 432, 439; *In re Initiative Petition No. 363*, 1996 OK 122, ¶13, 927 P.2d 558, 565.

¶5 The "gist" is a relative newcomer to Oklahoma's initiative petition process in comparison to the process itself. The statutory language creating the requirement is brief:

A simple statement of the gist of the proposition shall be printed on the top margin of each signature sheet.

Okla. Stat. tit. 34, § 3 (2001). Since the Legislature's creation of the gist requirement in 1985, this Court has discussed its nature in eight opinions. *In re Initiative Petition No. 341*, 1990 OK 53, 796 P.2d 267; *In re Initiative Petition No. 344*, 1990 OK 75, 797 P.2d 326; *In re Initiative Petition No. 342*, 1990 OK 76, 797 P.2d 331; *In re Initiative Petition No. 347*, 1991 OK 55, 813 P.2d 1019; *In re Initiative Petition No. 348*, 1991 OK 110, 820 P.2d 772; *In re Initiative Petition No. 360*, 1994 OK 97, 879 P.2d 810; *In re Initiative Petition No. 362*, 1995 OK 77, 899 P.2d 1145; and *Petition 363*, 1996 OK 122, 927 P.2d 558.

¶6 In *Petition 341*, we considered the gist for the first time and distinguished it from the ballot title with its more detailed requirements.[2] Because the gist was substantially similar to the title we had already determined to be sufficient, the gist was also sufficient. *Petition 341*, 1990 OK 53, ¶25, 796 P.2d at 274.

¶7 That same year, this Court declared two initiative petitions invalid, in part because their gists were insufficient. *Petition 344*, 1990 OK 75, 797 P.2d 326; *Petition 342*, 1990 OK 76, 797 P.2d 331. In *Petition 342*, we deemed the gist insufficient because it addressed only a few of the numerous constitutional changes proposed in the petition.

1. The Protestants argue that the proposed legislation would violate the spending provisions of the Oklahoma Constitution-article X, section 19, which prohibits taxes levied for one purpose to be devoted to another purpose; article X, section 28, which requires that monies in a school district's sinking fund may not be used for purposes other than the payment of interest, bonds, and judgments; and article X, section 41, which requires funds from the Oklahoma Education Lottery Trust Fund to be used for purposes other than classroom instructional expenditures. The Protestants also contend that the proposed legislation would violate article V, section 57, because it embraces more than one subject.

2. A ballot title:
   1. Shall not exceed two hundred (200) words;
   2. Shall explain in basic words, which can be easily found in dictionaries of general usage, the effect of the proposition;
   3. Shall be written on the eighth-grade reading comprehension level;
   4. Shall not contain any words which have a special meaning for a particular profession or trade not commonly known to the citizens of this state;
   5. Shall not reflect partiality in its composition or contain any argument for or against the measure;
   6. Shall contain language which clearly states that a "yes" vote is a vote in favor of the proposition and a "no" vote is a vote against the proposition; and
   7. Shall not contain language whereby a "yes" vote is, in fact, a vote against the proposition and a "no" vote is, in fact, a vote in favor of the proposition.
Okla. Stat. tit. 34, § 9(B) (Supp.2006).

While we declared the petition invalid because it violated the single subject rule, Okla. Const. art. V, § 57, we observed that the gist "should be sufficient that the signatories are at least put on notice of the changes being made." *Petition 342*, 1990 OK 76, ¶ 14, 797 P.2d at 334. A signature on the petition must reflect "the actual intent" of the voter. *Id.* ¶ 15, 797 P.2d at 334. In *Petition 344*, we made a statement that has been applied to gist analysis to this day: Both the gist and the ballot title "must be brief, descriptive of the effect of the proposition, not deceiving but informative and revealing of the design and purpose of the petition." *Petition 344*, 1990 OK 75, ¶ 14, 797 P.2d at 330. We continued, "The limitations imposed [on the gist and title] are necessary to prevent deception in the initiative process [and] voters, after reading the [gist] and the ballot title, should be able to cast an informed vote." *Id.*

¶ 8 In subsequent opinions, we reiterated that the gist must explain the proposal's effect. *Petition 347*, 1991 OK 55, ¶ 18, 813 P.2d at 1028. The explanation of the effect on existing law, however, does not extend to describing policy arguments for or against the proposal. *See id.* ¶ 23, 813 P.2d at 1029–1030. A gist is sufficient if it apprises the voters of what the proposed measure is intended to do. *Petition 348*, 1991 OK 110, ¶ 23, 820 P.2d at 779. Gists need only convey the practical, not the theoretical, effect of the proposed legislation. *Petition 360*, 1994 OK 97, ¶¶ 21–22, 879 P.2d at 817.

¶ 9 We have continued to distinguish the gist from the more-detailed title, describing it as a "shorthand explanation of a proposition's terms." *Petition 362*, 1995 OK 77, ¶ 10, 899 P.2d at 1150. The purpose of the gist "is to prevent deceit, fraud, and corruption in the initiative process." *Petition 363*, 1996 OK 122, ¶ 18, 927 P.2d at 567 (emphasis omitted). It "is not required to contain every regulatory detail so long as its outline is not incorrect." *Id.* ¶ 20, 927 P.2d at 567 (emphasis omitted). We will approve the text of a challenged gist if it is "free from the taint of misleading terms or deceitful language." *Id.*

¶ 10 In the initiative petition we consider today, the gist stated:

> This measure amends the Oklahoma School Code, by adopting the First Class Education for Oklahoma Act. It requires sixty-five percent (65%) of the operational expenditures of a school district to be spent on classroom instruction. Classroom instruction includes expenditures directly related to classroom instruction, including instructional staff and materials, activities dealing directly with interaction between students and teachers or other classroom personnel, special education instruction, tutors, books, classroom computers, general instruction supplies, instructional aides, libraries and librarians, class activities such as field trips, athletics, arts, music and multidisciplinary learning, and extra curricular activities including drama, sports and band. Nothing in the measure would force or require the closing or consolidation of any schools or school districts.

The Protestants contend the gist was flawed because it contained no description of the effect of the proposed law on school building funds, sinking funds, lottery trust funds, federal funds, and the possible practical effect of forcing school closures. In making this argument, the Protestants seek to have the gist reflect all of their constitutional concerns. We will not impose such a requirement. While the statement must put voters "on notice of the changes being made," *Petition 342*, 1990 OK 76, ¶ 14, 797 P.2d at 334, it need not make the Protestants' arguments for them by delineating each policy argument for and against the proposed legislation.

¶ 11 We are persuaded, however, by the Protestants' alternate argument, that the gist was flawed because it contained no discussion of the language in the proposed statute providing for legislative sanctions for non-conforming school districts and the possibility of waivers by the state superintendent. The Protestants contend that these omissions mean that the gist failed to alert potential signatories to the effect the proposed statute would have on the balance of power between local school boards and the

state. We agree.[3]

¶ 12 The "cut and paste" approach used here resulted in a gist that, at once, contains too much and not enough information. It defines "classroom instructional expenditures" in mind-numbing detail taken directly from the statute, but fails to define "operational expenditures"[4] or disclose provisions for stepped or phased-in compliance, the additional authority given to the Superintendent of Public Instruction to approve the school district budgets and waive noncompliance, and the possibility of legislative sanctions for noncomplying school districts. As a result, a potential signatory, looking only at the gist, did not have sufficient information to make an informed decision about the true nature of the proposed legislation. We are forced, therefore, to conclude that this gist does not satisfy the requirements of title 34, section 3.

¶ 13 The gist is but one part of the petition package-the "pamphlet"-handed to a prospective signatory. Okla. Stat. tit. 34, § 3 (2001). Indeed, it is but a small part of the pamphlet, which also contains a copy of the petition filed with the Secretary of State and the full text of the proposed statute. Nevertheless, the Legislature has deemed the gist a necessary part of the pamphlet and we are not at liberty to ignore that requirement, since we

must presume that the Legislature "expressed its intent" in creating the gist requirement and "that it intended what it so expressed." *TXO Prod. Corp. v. Okla. Corp. Comm'n,* 1992 OK 39, ¶ 7, 829 P.2d 964, 969; *see also Neer v. State ex rel. Okla. Tax Comm'n,* 1999 OK 41, ¶ 15, 982 P.2d 1071, 1078. The statement provided by the Proponents at the top of each signature page in this initiative petition did not satisfy the statutory requirement.

### INITIATIVE PETITION NO. 384, STATE QUESTION NO. 731, IS DECLARED INVALID AND ORDERED STRICKEN FROM THE BALLOT.

CONCUR: EDMONDSON, V.C.J., KAUGER, WATT, TAYLOR, COLBERT, JJ.

DISSENT: WINCHESTER, C.J., LAVENDER, HARGRAVE, OPALA, JJ.

Shall the following proposal be approved?

For the proposal     –    YES

Against the proposal    –    NO

A "YES" vote is a vote in favor of this measure. A "NO" vote is a vote against this measure.

Although no one filed an appeal from the proposed ballot title, we observe that it is not appreciably different from the gist we have found insufficient today. *See In re Initiative Petition No. 341,* 1990 OK 53, ¶¶ 20, 24–25, 796 P.2d 267, 273–74.

---

**3.** The ballot title, as proposed by the proponents, would have read:

This measure amends the Oklahoma School Code by adding a new section: Oklahoma Statute Title 70 Section 18–126 to require that sixty-five percent (65%) of the operational expenditures of a school district be spent on classroom instruction. For purposes of this Act, classroom instruction includes expenditures directly related to the classroom: instructional staff and materials, activities involving interaction between students and teachers or other classroom personnel, special education instruction, tutors, books, classroom computers, general instruction supplies, instructional aides, libraries and librarians, class activities such as field trips, athletics, arts, music and multidisciplinary learning, and extra-curricular activities including drama, sports and band.

The measure establishes a process for implementation of the Act and also permits waivers by the State Superintendent of Public Instruction in certain circumstances. Nothing in the measure would force or require the closing or consolidation of any schools or school districts.

**4.** It may not be necessary to define either "classroom instructional expenditures" or "operational expenditures" with the same kind of detail used by the Proponents in this gist, but the inclusion of one overly detailed definition without any definition of the other term creates an imbalance at odds with the purpose of the gist.