IN RE CITY OF EUFAULA INITIATIVE PETITION NO. 3
2022 OK CIV APP 29
Case Number: 119419
Decided: 07/21/2022
Mandate Issued: 08/17/2022
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2022 OK CIV APP 29, __ P.3d __

 

IN RE CITY OF EUFAULA INITIATIVE PETITION NO. 3:

MARTHA SELLERS, Petitioner/Appellant,
v.
CARL GRAUBERGER, Respondent/Appellee.

APPEAL FROM THE DISTRICT COURT OF
MCINTOSH COUNTY, OKLAHOMA

HONORABLE MICHAEL W. HOGAN, TRIAL JUDGE

AFFIRMED

David L. Weatherford, Tulsa, Oklahoma, for Petitioner

John Tyler Hammons, Anastasia Mahoney, HAMMONS HAMBY & PRICE, PLLC, Muskogee, Oklahoma, for Respondent

GREGORY C. BLACKWELL, JUDGE:

¶1 Martha Sellers appeals a decision of the district court interpreting a municipal election statute, 11 O.S. 2011, § 18-101

BACKGROUND

¶2 On September 30, 2020, Carl Grauberger, whom we will refer to as the proponent, filed a pre-circulation copy of an initiative petition with the Eufaula City Clerk. The petition sought a vote on changing Eufaula's statutory form of government (a "form of government" initiative).11 O.S.2011, § 18-101circulated and signed petition to be submitted 120 days before the candidate filing date for the next municipal general election. Although the proponent's pre-circulation petition was arguably submitted 120 days before the filing date, it is uncontested that his circulated and signed petition was not.

¶3 The district court ruled on March 8, 2021, that § 18-101 requires only that the unsigned petition be filed 120 days before the candidate filing date for the next municipal general election, and hence, the proponent's petition was timely.

STANDARD OF REVIEW

¶4 This question is one of statutory interpretation. Statutory interpretation is a question of law subject to de novo review. Fraternal Order of Police, Bratcher/Miner Mem'l Lodge, Lodge No. 122 v. City of Norman, 2021 OK 20489 P.3d 20In re Initiative Petition No. 426, State Question No. 810, 2020 OK 44465 P.3d 1259 In re Initiative Petition No. 403, 2016 OK 1367 P.3d 472In re Initiative Petition No. 382, 2006 OK 45

¶5 However, while the right of initiative petition is zealously protected by this Court, it is not absolute. Any citizen can protest the sufficiency and legality of an initiative petition. In re Initiative Petition No. 409, 2016 OK 51376 P.3d 250In re Initiative Petition No. 384, State Question No. 731, 2007 OK 48164 P.3d 125In re Initiative Petition No. 426, State Question No. 810, ¶ 4 (internal quotation marks omitted).

ANALYSIS

¶6 A single question of statutory interpretation is presented here. Title 11 O.S. § 18-101unsigned, pre-circulation petition or if it requires the filing of a petition that has been circulated and signed by the requisite number of qualified voters. The answer disposes of this case because the uncirculated petition here was filed 126 days before the candidate filing date, but the circulated and signed petition was filed only 44 days before the candidate filing date. Thus, if it is only an unsigned, pre-circulation petition that is subject to the filing deadline, the proponent wins and the district court must be affirmed.

THE HISTORY AND TEXT OF 11 O.S. § 18-101

¶7 Although both parties make various arguments that their interpretation should prevail because it avoids significant practical difficulties in the running of municipal elections, we believe the answer to the question flows directly from the text of the statute in question. This is especially true when that text is viewed in the light of its history. Thus, a brief recitation of the history of the relevant statutory sections is required.

¶8 Prior to 1977, all questions of "initiative and referendum" were addressed in Title 34 (Initiative and Referendum) of the Oklahoma Statutes, and there was no special procedure for a municipal initiative dealing with a change in the statutory form of government.

¶9 With this move to Title 11, the 1977 legislature also added two new articles to Title 11--Articles 18 and 19. These concern two specific types of initiative: those seeking to change the form of government and those seeking to change the name of the municipality. These articles set different requirements from the general municipal initiative petition statutes set out in Article 15. Article 18 concerns a change to the statutory form in government and is our focus here.

¶10 As enacted in 1977, § 18-101 allowed "[a]ny city operating pursuant to a statutory form of city government" to "change to any one of the other statutory forms of city government." 11 O.S.Supp.1977, § 18-101

The mayor shall issue an order calling for an election on the question of whether or not the city shall change its form of government if:

(1) a petition signed by not less than twenty percent (20%) of the registered voters of the municipality as shown by the preceding general election is filed with the governing body; or

(2) The governing body, by resolution, so directs.

The petition or resolution of the governing body shall be filed at least one hundred twenty (120) days before the next municipal primary election and must include the form of government which is proposed for adoption. The order calling for the election shall be issued within ten (10) days after a petition has been filed with the governing body or within ten (10) days after the effective date of the governing body resolution.

11 O.S.Supp.1977, § 18-101Id. § 18-102.

¶11 This 1977 version of § 18-101 and § 18-102 introduced several relevant changes from the general procedure for municipal initiatives as outlined in Article 15, specifically § 15-103. Most notably, § 18-101 required the signatures of only twenty percent of the voters as necessary to put the question to the vote, instead of the more usual twenty-five percent stated in § 15-103. It also required that a form of government petition be filed 120 days before the "next municipal primary election." No such deadline appears in Article 15. Section 15-103 also contemplates the filing of a petition prior to circulation, stating "[a] true copy of each measure proposed shall be filed with the clerk of the municipality before it is circulated and signed by the registered voters." 11 O.S.Supp.1977, §15-103

¶12 Notably, under the 1977 version of § 18-101 it was the "signed" petition that must be filed "at least one hundred twenty (120) days before the next municipal primary election." This stood in stark contrast to the general procedure set forth in Article 15, which clearly contemplated two separate filings of the petition, with only the second filing needing to contain the signatures of the requisite number of voters. 11 O.S.Supp.1977, § 15-103before it is circulated and signed by the registered voters.) (emphasis supplied)); Id. § 15-103(C) ("Signed copies of an initiative petition shall be submitted to the clerk within ninety (90) days after the initial filing of the measure with the clerk." (emphasis supplied)).

¶13 However, in 1984, the legislature made significant amendments to the Article 18 procedure. As relevant, they made the following specific changes to § 18-101:

The mayor shall issue an order calling for an election on the question of whether or not the city shall change its form of government when if:

1. A an initiative petition signed by not less than twenty percent (20%) of the voters" of the municipality as shown by the preceding general election is filed with the governing body; or

2. The the governing body, by resolution, so directs.

The initiative petition, or resolution of the governing body ,must shall be filed at least one hundred twenty (120) days before the filing date for the next municipal primary general election and must shall include the form of government which is proposed for adoption. The order calling for the election shall be issued by the governing body of the municipality within ten (10) days after a petition has been filed with the governing body a decision has been made on the ballot title, or within ten (10) days after the effective date of the resolution of the governing body resolution.

Laws 1984, HB 1669, c. 126, § 33, eff. November 1, 1984. This statute has not been modified since.

¶14 Various changes from the 1977 statute are evident, but two stand out, and in our view, decide this case. First, the requirement of a "petition signed by not less than twenty percent (20%) of the registered voters" was entirely removed. Second, the word "initiative" was inserted each time before the word "petition" was used. We believe the clear import of these changes was to direct a municipality, when presented with a request to change the form of government, to use the general procedures for initiative petitions as already set forth in Article 15, unless those procedures conflicted with a procedure that remained in Article 18. Even the contestant must admit this reading when it comes to the percentage of voters that must, eventually, sign the proposed measure. The contestant admits that number must now be borrowed from Article 15. We think the argument that Article 18, even after this change, continues to make any requirement that the initial petition must arrive already circulated and signed is rebuffed by the clear statutory change as well. Having entirely deleted the prior signature requirement, it is clear that the legislature intended that the procedures of Article 15 as to the timing of the filing of copies of the circulated and signed petition prevail. As such, we hold that it is only the unsigned, pre-circulation copy of the petition--"[a] true copy of each measure proposed," pursuant to Article 15--that must be filed with the city clerk 120 days prior to the filing date for the next municipal general election.

¶15 We note that each party raises various questions about the practical effects of the other's reading of the statute in an effort to call that reading into doubt.

THE REFILING OF THE PETITION

¶16 The contestant also argues that, even if it is only the pre-circulation petition that must be filed before or at the 120-day mark, the petition here was still untimely. The proponent filed the pre-circulation petition and ballot title on September 30.

¶17 The contestant's argument rests on a misunderstanding of the law in this area. First, there is no statutory requirement that a ballot title be filed 120 days before the candidate filing date. The ballot title "may be filed with the clerk prior to circulating the petition, but it must be submitted no later than the time that the signed copies of the petition are filed with the clerk." 11 O.S. § 15-105

¶18 Second, there is no statutory requirement that the petition be refiled if the ballot title is not found to be in the proper form. Section § 15-105 is clear that, if the ballot title is not in proper form in the opinion of the city attorney, it is the attorney, not the proponent, that must file a revised ballot title, not a revised petition. As such, any revised petition filed by the proponent on October 8th was not required and the September 30th petition was timely.

CONCLUSION

¶19 The legislature created a special procedure for form-of-government questions in 1977 and revised this procedure in 1984 with the intent to harmonize these procedures more closely with the general laws regarding municipal initiatives. The issues and concerns raised by the parties here indicate that the Article 18 procedure is not free from complications and may be ripe for a legislative fix. We find, however, that it is the unsigned, pre-circulation petition that must be submitted 120 days before the candidate filing date, and that the signed petition may be submitted up to 90 days later. Under this reading, the proponent's petition was timely filed and the judgment of the district court is therefore affirmed.

¶20 AFFIRMED. 

WISEMAN, P.J., and FISCHER, C.J. (sitting by designation), concur.

FOOTNOTES

11 O.S. § 16-110 It begins "no earlier than 8:00 a.m. on the first Monday in February" and ends "no later than 5:00 p.m. on the next succeeding Wednesday." 11 O.S. § 16-110date, we must resolve the ambiguity between the statutes and select a date from which begin counting. The parties' briefs appear to use the first day for their calculations. Further, another statute, 26 O.S. § 13-102

11 O.S.Supp.1977, §§ 18-103

ballot title, not the signed petition. We question the advisability of this procedure. (And we are apparently not alone in this regard, as no order for the election in this case appears to have issued at all. The parties appear to have partially followed the general provisions of Article 15, rather than the specific procedures of Article 18 on this point.)

While each of these claims of practical problems may have merit, they only reveal that the legislature's 1984 amendments may have had unintended consequences that must be resolved in some future case, or, preferably, by corrective legislation. They do not overcome the clear import of the 1984 amendments which, as we have held, was to default to the Article 15 procedures for general municipal initiative petitions to the extent Article 18 does not directly conflict. Because there is no conflict with our reading of the provisions as to the question presented here, we need not evaluate the statutes further.