OSCN Found Document:STATE CHAMBER OF OKLAHOMA v. COBBS

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 STATE CHAMBER OF OKLAHOMA v. COBBS
2024 OK 13
Case Number: 121777
Decided: 03/04/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 13, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE CHAMBER OF OKLAHOMA, OKLAHOMA FARM BUREAU LEGAL FOUNDATION, CHAD WARMINGTON, and TOMMY SALISBURY, Protestants/Petitioners, 
v.
KELSEY COBBS and DUSTIN PHELAN, Proponents/Respondents.
ORDER
¶1 The Court hereby assumes original jurisdiction pursuant to 34 O.S.2021, § 8 and denies all relief. Title 34 O.S.2021, § 8(B) provides the public with a right to "file a protest as to the constitutionality of the [initiative] petition, by a written notice to the Supreme Court and the proponent or proponents filing the petition." Subsections (C) and (D) of section 8 provide for a hearing for and against the sufficiency of the petition and for this Court to decide whether such petition is in the form required by the statutes. Initiative Petition No. 446 does not clearly or manifestly violate either the Oklahoma or United States Constitution. See In re Initiative Petition No. 420, State Question No. 804, 2020 OK 9, ¶ 14, 458 P.3d 1088, 1093--94; In re Initiative Petition No. 362, State Question 669, 1995 OK 77, ¶ 12, 899 P.2d 1145, 1151. Initiative Petition No. 446 is legally sufficient. See In re Initiative Pet. No. 358, 1994 OK 27, ¶ 7, 870 P.2d 782, 785. Respondents may proceed in the gathering of signatures on the initiative petition.
¶2 DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 4TH DAY OF MARCH, 2024.
/s/ Douglas L. Combs 
ACTING CHIEF JUSTICE
KAUGER, WINCHESTER, EDMONDSON, COMBS, GURICH, and DARBY, JJ., concur.
KUEHN, J. (by separate writing), concurs in part and dissents in part.
KANE, C.J. (by separate writing), and ROWE, V.C.J. (by separate writing), dissent.

KUEHN, J. CONCURRING IN PART, DISSENTING IN PART:
¶1 I agree with the Majority that Initiative Petition 446 should go to a vote of the people. I disagree with its decision to determine whether the Petition itself violates the Oklahoma Constitution.
¶2 This challenge offers this Court the opportunity to review the extent of its jurisdiction under Title 34, which governs the initiative and referendum process. I take that opportunity in the context of the Oklahoma Constitution, a notoriously populist document, which states that "[a]ll political power is inherent in the people. . . [,]" who may alter or reform its government for the public good, in accordance with the United States Constitution. Okla. Const. art. 2, § 1. The ability to legislate by initiative petition is the first power reserved to the People in the Oklahoma Constitution. Okla. Const., art. 5, § 2. The People reserved power to themselves to propose laws, pass on legislation, amend the Constitution, and vote on those proposals without legislative action. Okla. Const. art. 5, § 1. "The right of the initiative is precious, and it is one which this Court is zealous to preserve to the fullest measure of the spirit and the letter of the law." In re Initiative Petition No. 382 State Question No. 729, 2006 OK 45, ¶ 3, 142 P.3d 400, 403. "All doubt as to the construction of pertinent provisions is to be resolved in favor of the initiative and such legislation is to be given the same liberal construction as that afforded election statutes generally." In re Initiative Petition No. 348 State Question No. 640, 1991 OK 110, ¶ 5, 820 P.2d 772, 775 (quoting Oliver v. City of Tulsa, 1982 OK 121, ¶ 31, 654 P.2d 607, 613).
¶3 We first considered initiative petitions in 1910 and concluded that the judiciary should not interfere with the initiative petition process by determining the constitutionality of the merits of a petition before it was put to a vote. Threadgill v. Cross, 1910 OK 165, ¶¶ 15-22, 109 P. 558, 561-62. This remained our position for decades. In 1975 our previous path of restraint ended. We decided that where an initiative petition violated the Oklahoma Constitution, and this Court's "determination could prevent a costly and unnecessary election," we may intervene in the initiative petition process before an election is held. In re Supreme Court Adjudication of Initiative Petitions in Norman, Okla. Numbered 74-1 and 74-2, 1975 OK 36, ¶ 19, 534 P.2d 3, 8. As late as 1992, however, this Court recognized a limitation to this authority. In re Supreme Court Adjudication etc. allowed review of constitutional claims where the provisions were not severable from the remainder of the petition, but "[w]here the questioned provision is severable, and resolution of constitutional issues prior to the act becoming law would not prevent a costly and potentially unnecessary election. . . ," Threadgill would apply. In re Initiative Petition No. 347, State Question No. 639, 1991 OK 55, ¶ 25, 813 P.2d 1019, 1030-31; see, e.g., In re Initiative Petition No. 358, State Question No. 658, 1994 OK 27, ¶ 7 n. 15, 870 P.2d 782, 786 n.15; In re Initiative Petition No. 349, State Question No. 642, 1992 OK 122, ¶ 15 n. 18, 838 P.2d 1, 7 n.18; In re Initiative Petition No. 315, State Question No. 553, 1982 OK 15, ¶ 5, 649 P.2d 545, 548. Under this interpretation, of course, Threadgill would apply here, since the provision at issue in Initiative Petition 446 is severable from the petition as a whole. However, we appear to have abandoned even this simple safeguard, and the exception has swallowed the rule.
¶4 In its current interpretation of the law, this Court may control whether an initiative petition goes to the people for a vote by considering and deciding its constitutional merits. However, Supreme Court Adjudication of Initiative Petitions in Norman did not articulate in a legal context how this exception to an inherent power reserved to Oklahoma citizens exists. We noted that Title 34, Section 8 placed with this Court administrative duties regarding the initiative petition procedure, and stated, "We believe this court is not limited solely to the duties of an administrative officer or act." Supreme Court Adjudication of Initiative Petitions in Norman, 1975 OK 36, ¶ 19, 534 P.2d at 8. Belief is not a legal reason. It is a justification. The Court was justifying its desire to decide the constitutional issue. But our authority does not come from the beliefs of either individual Justices or the Court as a whole.
¶5 This Court's expansion of our pre-election review of initiative petitions exceeds our constitutional mandate. Our jurisdiction is limited to "all cases at law and in equity." Okla. Const. art. VII, § 4. We may decide what the law is, but we cannot "say what law shall or shall not be enacted." Cress v. Estes, 1914 OK 361, 142 P. 411, 412. The Legislature has provided for appeals to this Court from a protest to an initiative petition. 34 O.S. §§ 8, 10. Any citizen may protest the sufficiency or constitutionality of an initiative petition by filing written notice with its proponents and this Court. 34 O.S. § 8(B). However, the scope of our review is limited and does not include a determination of constitutionality pre-election. The Legislature merely authorizes the Court, upon review, to "decide whether such petition is in the form required by the statutes," and determine the "numerical sufficiency or insufficiency" of the signatures. 34 O.S. § 8(D), (H). Upon review of a ballot title this Court may correct or amend it, accept a proposed substitute, or draft a new title conforming to statutory provisions. 34 O.S. § 10(A). These statutory provisions empower this Court to ensure that the form of a proposed initiative petition is correct but say nothing about review of the substance of the petition.
¶6 Justice Rowe, in dissent, concludes that Section 8(B) implicitly authorizes us to review a constitutional challenge pre-election. But that is not what Section 8 says. We must read statutes as a whole, giving effect to each provision. Oklahoma Dept. of Corrections v. Byrd, 2023 OK 97, ¶ 27, __ P.3d __. The literal language of the statute (a) sets forth the types of challenges which may be made, and (b) sets forth the scope of this Court's review. The two are not contemporaneous. Of course, this Court has the authority to hear a constitutional challenge to any measure which is passed and enacted into law. But neither the Oklahoma Constitution nor the initiative petition statute compels this Court to address such a challenge before it is ripe -- before there is any law to discuss. As Justice Wyrick said, "If our job is to 'say what the law is,' and in a constitutional challenge thus to say whether the Constitution prohibits another law from having an effect on these parties, then we cannot do that without first having a law." Oklahoma Independent Petroleum Association v. Potts, 2018 OK 24, ¶ 12, 414 P.3d 351, 365 (Wyrick, J., specially concurring). And I cannot agree to rely on case law precedent to weigh a pre-election constitutional challenge, as that precedent -- justifying our inferred authority from Section 8(B) -- rests on nothing more than this Court's "belief" that it has that authority.
¶7 Why, then, has the Court since 1975 insisted on its ability to review and decide these constitutional questions? After reviewing the case results I reluctantly conclude that over the last few decades this Court has been motivated by a desire to ensure that certain measures are either on or off the ballot -- to decide for itself what the People should or should not put to a vote.
¶8 This Court claims that it will step in only where a petition is clearly or manifestly unconstitutional. See, e.g., In re Initiative Petition No. 362 State Question 669, 1995 OK 77, ¶ 12, 899 P.2d 1145, 1151. First, neither art. 5 nor Title 34 says that the People may only introduce and pass laws which comport with current statutory or constitutional law. Citizens may use the initiative petition to articulate state policy, in order to prepare for potential changes in the law or influence subsequent case law or legislation. Oklahoma Independent Petroleum Association, 2018 OK 24, ¶¶ 15-18, 414 P.3d at 365-67 (Wyrick, J., specially concurring). "The People's ability to express their views through constitutional amendment thus matters, even when those views don't align with federal policies. The People are either sovereign or they are not." Id., ¶ 19, 414 P.3d at 367. And if a manifestly unconstitutional petition becomes law, the law may be challenged and this Court has both the duty and the authority to correct the error.
¶9 Second, how does the Court measure manifestly and clearly? Some cases have involved a facially unconstitutional issue. In Supreme Court Adjudication of Initiative Petitions in Norman, the substance of the petition involved amending the Norman municipal charter to change the method of operation of a municipal utility. We concluded that the petition was facially constitutional and was thus sufficient. Supreme Court Adjudication of Initiative Petitions in Norman, 1975 OK 36, ¶ 17, 534 P.2d at 8. Later, we decided cases where petitions proposed various restrictions on abortion which, at the time, facially violated the United States Constitution by contravening controlling United States Supreme Court case law. See, e.g., In re Initiative Petition No. 349, State Question No. 642, 1992 OK 122, ¶ 35, 838 P.2d at 12. In most cases, the Court must use similar statutes or case law in comparison to determine a provision's constitutional status. That is neither clear nor manifest.
¶10 Here is an example of this process taken to an extreme. This Court declared unconstitutional a proposed initiative petition requiring exclusive use of the English language within state government. In re: Initiative Petition No. 366, State Question No. 689, 2002 OK 21, 46 P.3d 123. There, the proponents of the petition unsuccessfully attempted to withdraw it after it was submitted to the Secretary of State and after protests were filed, but before this Court considered the challenges. Id., 2002 OK 21, ¶ 2, 46 P.3d at 125. Thus, as Justice Opala noted in dissent, the Court insisted on reviewing a petition which had no advocate, and which nobody was pressing for submission to a vote. Id., 2002 OK 21, ¶ 2, 46 P.3d at 131 (Opala, J, dissenting). I can only conclude that the majority in that case simply wanted to decide the constitutional issue.
¶11 The Court appears to have been swayed in Supreme Court Adjudication of Initiative Petitions in Norman and subsequent cases by the claim that an early decision on the constitutional merits will save the State, and thus the People, time and money. We have gone so far as to state it is our duty to decide a constitutional issue to prevent a "useless" election. In re Initiative Petition No. 349, 1992 OK 122, ¶ 18, 838 P.2d at 8. No matter how noble the effort, that methodology misses the point of the right to initiative petition. Our Constitution provides twin paths to lawmaking: the Legislature and the People. In this context the voters are acting as the Legislature -- they propose and vote on statutory or constitutional changes which, if passed, will become law. It is inappropriate for this Court to block that lawmaking path for cost considerations, just as it would be inappropriate for us to so treat Legislative proposals. And at this very early stage of the proceedings, there's no guarantee that this measure will ever require an election. The proponents of the initiative petition bear the initial financial burden to prepare the petition and collect signatures. Should they be successful, Title 34 not only contemplates but requires the petition be put to a vote of the people by election. That requirement, which facilitates the Constitutional right reserved to the people, shouldn't be overridden by this Court's speculative concern about election costs.
¶12 I do not break new ground in following Threadgill. Justice Opala objected strongly to the initial exception to Threadgill which the Court had created in Supreme Court Adjudication of Initiative Petitions in Norman. In numerous separate opinions he reiterated his conviction that this Court had no authority to decide constitutional issues pre-election. I agree with his observation that "Threadgill should be kept in full force because it raises a necessary barrier of insulation between judicature and initiative lawmaking. The former is a function of judges, the latter of the people." In re Initiative Petition No. 349, 1992 OK 122, ¶ 5, 838 P.2d at 21 (Opala, J., dissenting) (emphasis omitted). Justice Wilson, dissenting in part in the same case, objected that the Court had interfered with the People acting as a legislative branch; if the petition had sufficient valid signatures, she said, the "only constitutional course" was to allow the people to vote. Id., 1992 OK 122, ¶ 7, 838 P.2d at 18 (Wilson, J., dissenting in part). Justice Wyrick wrote at length discussing the history and doctrine underlying Threadgill's refusal to pass on a constitutional issue pre-election, and some legal consequences of its abandonment. Oklahoma Independent Petroleum Association v. Potts, 2018 OK 24, ¶¶ 11-19, 414 P.3d at 364-67 (Wyrick, J., concurring specially).
¶13 Here, the Majority and the dissenters champion opposite dispositions but, from my point of view, get there the same way. The Majority finds without analysis or explanation that "Initiative Petition 446 does not clearly or manifestly violate either the Oklahoma or United States Constitution." That is, it wants to declare the petition constitutional. The dissenters want to declare it unconstitutional. Everyone wants this Court to decide the substantive merits of this petition before the voters even have a chance to see it.
¶14 Reading Title 34, Sections 8 and 10 along with the relevant Constitutional provisions and Threadgill, I conclude we have no business determining the merits of a substantive protest to a petition's contents before it is put to a vote of the people. Confining my review to those parameters, I would find Initiative Petition 446 is in the form required by the statutes and sufficient.
[1] And I would overrule Supreme Court Adjudication of Initiative Petitions in Norman and subsequent cases insofar as they arrogate to this Court a power not granted to us by the Legislature or the Oklahoma Constitution. Of course, in many of those cases, the result would remain the same, since under my interpretation of the law the petitions would go to a vote of the people.
¶15 Not only is this challenge raised pre-election, but the proposed initiative petition has not yet been circulated for signature. In addition, it seeks to amend the Minimum Wage Act -- a statute -- which may always be changed by the Legislature. Under these circumstances I think it is wildly premature for this Court to intervene. The People should have the opportunity to vote on the measure if it reaches the ballot, the Legislature will have the opportunity to review it if it passes, and this Court should reserve its action for any challenges that may be raised post-election.
FOOTNOTES
[1] I am not persuaded by Petitioners' argument that the gist is so misleading that it violates the statutory form.

KANE, C.J., dissenting:
¶1 Today, we ignore clear precedent specifying Constitutional and statutory infirmities in a proposed initiative petition without discussion. The People are entitled to Court decisions which comport with existing law or else give clear explanation when departure from extant law is necessary. In my view, the proposed initiative petition is a violation of the non-delegation doctrine, is not capable of correction by severance, and has a faulty gist.
¶2 The rights of initiative and referendum are vital to our democracy, but they are not absolute. These rights are subject to limitations established by the Constitution, legislative enactments, and this Court's jurisprudence. See In re Initiative Petition No. 384, State Question No. 731, 2007 OK 48, ¶ 2, 164 P.3d 125, 127 (citing In re Initiative Petition No. 379, State Question No. 726, 2006 OK 89, ¶¶ 16-17, 155 P.3d 32, 39-40). Any citizen can protest the legal sufficiency of an initiative petition pursuant to 34 O.S.Supp.2015 § 8, and "it is this Court's responsibility to see the petitions for change . . . comply with the requirements set out in both the Constitution and the statutes." In re Initiative Petition No. 344, State Question No. 630, 1990 OK 75 ¶ 16, 797 P.2d 326, 330.
I. DISCUSSION
A. The Petition is an Unconstitutional Delegation of Legislative Authority to Federal Officials 
¶3 Initiative Petition 446 is facially an unconstitutional delegation of legislative authority to federal officials in direct contravention of this Court's jurisprudence in City of Oklahoma City v. State ex rel. Department of Labor, 1995 OK 107, 918 P.2d 26. In City of Oklahoma City, the Legislature passed a similar statute to the one at issue here, requiring the Oklahoma Labor Commissioner to adopt the prevailing wage as determined by the U.S. Department of Labor. Id. ¶ 9, at 28. We held the Act [Prevailing Wage Act] violated the non-delegation doctrine because (1) it delegated to an administrative arm of the federal government; (2) it failed to establish definite standards or articulated safeguards; (3) it was less answerable to the will of the people of Oklahoma than the Labor Commissioner who holds elective office; and (4) it leaves public entities with no Oklahoma forum in which to challenge a wage determination. Id. ¶¶ 1, 9, 14, 18-19, 918 P.2d at 28-30.
¶4 Initiative Petition 446 contains the exact same constitutional infirmities found in City of Oklahoma City: it raises the minimum wage in 2030 and every year annually thereafter, to be increased based on "the Consumer Price Index . . . as published by the U.S. Department of Labor." As Petitioners point out: (1) this leaves no standards for the U.S. Department of Labor to follow in calculating the CPI-W; (2) it leaves that important determination solely to the discretion of unelected bureaucrats who are arms of the federal government who are unaccountable to the Oklahoma Legislature or Oklahomans; and (3) Oklahomans and their state officials have little power to challenge the U.S. Department of Labor's CPI determinations that will govern Oklahoma's minimum wage.
¶5 The argument of Respondents that other Oklahoma legislation contains reference to the Consumer Price Index is specious. Many of the implementations referenced are distinguishable, and if Respondents cited statutes that are arguably violations of the non-delegation doctrine, those statutes are not properly before this Court in this case.
¶6 The proposed petition is a prospective enactment that purports to self-amend depending on some future federal standard not yet determined. After 2030, Oklahoma's minimum wage is proposed to be increased by the cost of living, if any, measured by the annual increase in the CPI-W published by the U.S. Department of Labor. The Attorney General expressed concerns that: (1) the CPI-W "is inherently colored by the subjective discretion of its publisher" -- the U.S. Department of Labor's Bureau of Labor Statistics; (2) the CPI-W can cease to exist altogether; and (3) the CPI-W itself actually represents a national average not necessarily representative of Oklahoma and perhaps even less representative of rural Oklahoma. While these arguments hinge more on policy than law, the Attorney General points to relevant factors underpinning the wisdom of the non-delegation doctrine.
¶7 Does the majority overrule City of Oklahoma City v. State ex rel. Department of Labor by implication, or factually distinguish said case? There is no way to tell. In my opinion, there is no way to summarily allow the Petition to proceed without either expressly contracting our teachings of the non-delegation doctrine in City of Oklahoma City, or else expressly overruling said precedent.

1. Severability Clause

¶8 Respondents argue that even if the reference to the CPI-W in Initiative Petition 446 had been found to violate the non-delegation doctrine, that by itself, does not invalidate the petition altogether because the petition contains a severability clause. The majority finds the proposed Petition wholly sufficient, rendering a severability analysis moot, but it is my opinion that the Petition is both deficient, and not susceptible to correction by severance. Initiative Petition 446 provides that if any part of the measure is held invalid, the remainder of the petition should still take effect. See State Question 832 § 1(E).
¶9 Under Oklahoma law, we have the authority to sever unconstitutional or insufficient provisions of an initiative petition. See In re Initiative Petition No. 347, State Question No. 639, 1991 OK 55, ¶ 24, 813 P.2d 1019, 1030. [1] In the case of In re Initiative Petition No. 347, State Question No. 639, the protestant argued the petition was constitutionally invalid on three separate grounds. Id. ¶ 24, at 1030. We held that protestant's allegations were not sufficient to defeat the submission of the initiative to the people of this state. Id. Specifically, we held that "[t]he alleged fact that a portion of an initiative petition would violate the constitution does not render the petition invalid where the proposed law contains a severability provision, and the questioned provisions could be eliminated without impairing the effect of the act." Id. ¶ 24, at 1030 (referencing In re Initiative Petition No. 191, 1949 OK 127, ¶¶ 12-13, 207 P.2d 266, 270). We assumed, without deciding the issue, that the "these isolated infirmities would not invalidate the proposed statute in its entirety" and "should not be held to block the right of the people to pass legislation through the reserved power of the initiative." Id. ¶ 24, at 1030.
¶10 In the case of In re Supreme Court Adjudication of Initiative Petitions in Norman, Oklahoma No. 74-1 & 74-2,1975 OK 36, 534 P.2d 3, this Court departed from our long-held teachings and considered the constitutionality of an initiative petition before it became law. There we said if questions of constitutionality are raised as to subject matter procedure and form, those queries may be addressed and determined if the Court determines that such a resolution could prevent an expensive and unnecessary election. Id. ¶ 19, at 8. This question is answered through an examination of the severability of the provisions in question. See In re Initiative Petition No. 315, State Question No. 553, 1982 OK 15, ¶ 5, 649 P.2d 545, 548. If the provisions are not severable the questions are determinable prior to passage of the act by approval of the voters. Id. The converse of this point is also true. Where the questioned provision is severable, and resolution of constitutional issues prior to the act becoming law would not prevent a costly and potentially unnecessary election, the questioned constitutionality is not ripe for determination since it presents nothing more than an abstract opinion on a hypothetical question. 
¶11 The Alaska Supreme Court addressed this issue of severability in an initiative petition in Mallot v. Stand for Salmon, 431 P.3d 159 (Alaska 2018), wherein the Alaska Supreme Court held "that impermissible portions of an initiative can be excised, and the remainder invalidated, where each of the following factors are met: (1) standing alone the remainder of the proposed bill can be given legal effect; (2) delegating the impermissible portion would not substantially change the spirit of the measure; and (3) it is evident from the content of the measure and the circumstances surrounding its proposal that the sponsors and subscribers would prefer the measure to stand as altered, rather than to be invalidated in its entirety." Id. at 171-72.
¶12 In Mallot, the Alaska Supreme Court applied the above severability factors and found that severance was not required as to mitigation and habitat protection provisions to remedy the initiative; but severance was warranted as to the explicit restrictions to preserve the initiative. Id. at 177. As a result, severing the offending provisions was an appropriate remedy to save the initiative. "[B]y severing the offending provisions the constitutional problem can be remedied without substantially changing the spirit of the measure" and "the remainder of the initiative would not impermissibly infringe on the legislature's authority over appropriations or that delegated to the ADFG [Alaska Department of Fish & Game] but would still establish a comprehensive regulatory framework for activities that potential harm anadromous fish habitat." Id.
¶13 I believe that the Court in Mallot set forth a pragmatic and practical test to evaluate the severability of an Initiative Petition and would adopt the same test for this jurisdiction. Applying these factors to the case at bar, standing alone, the balance of the Initiative Petition could be given legal effect; and that the sponsors and subscribers would prefer the measure to stand as altered, rather than to be invalidated in its entirety (they have expressly so indicated). However, I find that the spirit of the proposed measure is to adopt a permanent indexing of the State minimum wage to a federal benchmark, with some specified benchmark wages set on the path towards an indexed wage. Once the indexed wage has been invalidated, the spirit of the measure has been breached. I would therefore find that the request for severability fails.

B. Sufficiency of the Gist

¶14 While the gist was not specifically mentioned in the majority Order, we must presume that it was not found deficient. The gist of an initiative petition is required by 34 O.S.2011 § 3, which provides, in pertinent part: "[a] simple statement of the gist of the proposition shall be printed on the top margin of each signature sheet." This Court has explained:
[The] purpose of the gist, along with the ballot title, is to prevent fraud, deceit, or corruption in the initiative process. The gist should be sufficient that the signatories are at least put on notice of the changes being made, and the gist must explain the proposal's effect. The explanation of the effect on existing law does not extend to describing policy arguments for or against the proposal. The gist need only convey the practical, not the theoretical, effect of the proposed legislation, and it is not required to contain every regulatory detail so long as its outline is not incorrect. We will approve the text of a challenged gist if it is free from the taint of misleading terms or deceitful language.
In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, ¶ 3, 376 P.3d 250 (footnotes and internal quotations omitted) (emphasis original). Each signature sheet is attached to a copy of the initiative petition. See 34 O.S. § 3. The two form what is called the "pamphlet"[2] and is circulated to potential signatories. Id. The gist at the top of each signature sheet is a shorthand explanation of the proposal's effect. See Initiative Petition No. 409, 2016 OK 51, ¶ 4.
¶15 We recently summarized how omissions of information from the gist should be evaluated in the case of In re Initiative Petition No. 420, State Question No. 804, 2020 OK 10, ¶ 4, 458 P.3d 1080, 1084. "Because the purpose of the gist is to prevent fraud, deceit or corruption in the initiative process, any alleged flaw created by an omission of details in the gist must be reviewed to determine whether such omission is critical to protecting the initiative process." Id. ¶ 4, at 10 (citing In re Initiative Petition No. 363, State Question No. 672, 1996 OK 122, ¶¶ 18-20, 927 P.2d 558, 567). "The sole question . . . is whether the absence of a more detailed gist statement . . . without more, perpetuates a fraud on the signatories." Id. ¶ 19, at 558.
¶16 I fully agree with the Petitioners' proposition that Initiative Petition 446 is legally insufficient because it proposes to circulate to the voters a gist that misleads voters with respect to the Petition's effect on existing law. The gist is misleading in two ways. First, the gist is misleading because it provides a list of exemptions from the Oklahoma Minimum Wage Act that the proposal would "eliminate," and it provides a list of certain employees that "would remain exempt." In regards to government workers, it provides, "Under this measure, federal and state employees would not be covered under the OMWA." This language is misleading because the Petition suggests that amending the law would exempt federal workers, when in fact, they are already exempt under the existing law. Similarly, the Attorney General in his Brief, points out that "the initiative petition gives the false impression that the OMWA does not currently exempt federal employees and that the approval of the petition is needed to create this exemption."
¶17 The gist is also misleading because it fails to inform voters that the exemption under the OMWA for "[s]ome employers with ten or fewer employees" only applies to businesses with less than ten employees at any one location that have an annual gross revenue of less than $100,000. The gist fails to alert potential signatories about the true nature of the law by failing to include key limitations in the exemption -- that the business have ten or less employees at any one location and that the business have an annual gross revenue of less than $100,000, and therefore it should be invalidated.
¶18 The gist is ambiguous and confusing to voters in how it characterizes "[s]ome employers with ten or fewer employees" and "certain other types of employees and volunteers." Describing the current exemptions in the OMWA with such vagueness and generalities, improperly requires potential signatories to know what the law was prior to the proposal. Without requiring a more specific description of the exemptions being retained (for example, knowing that "some employers with ten or fewer employees" applies to those grossing less than $100,000), the initiative petition puts everyday signatories in the impossible and awkward position of making incorrect assumptions about the OMWA and the gist of the initiative petition in an attempt to make an informed decision.
¶19 The challenged provisions do not accurately explain the proposal's effect on existing law and are confusing and misleading. The gist does not put signatories on notice of the changes being proposed, and it suggests one change that already currently exists in the law. As a result, the gist is legally insufficient.
II. CONCLUSION
¶20 Based upon a neutral application of our Constitution, statutes, and existing precedent, this Court should grant the Petitioners' Application to Assume Original Jurisdiction and declare Initiative Petition 446 legally insufficient by opinion. I respectfully dissent to the Court's declination to do so.
FOOTNOTES
[1] Statutes, as opposed to Initiative Petitions, have the following severability provision set forth in law:
In the construction of the statutes of this state, the following rules shall be observed:
1. For any act enacted on or after July 1, 1989, unless there is a provision in the act that the act or any portion thereof or the application of the act shall not be severable, the provisions of every act or application of the act shall be severable. If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds:
a. the valid provisions or application of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or
b. the remaining valid provisions or applications of the act, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.
75 O.S. § 11a.
[2] As of April 28, 2015, the more detailed ballot title is no longer part of the pamphlet circulated to potential signatories. See 34 O.S.Supp.2015 §§ 2, 8(A). As a result, [t]he gist alone must now work to prevent fraud, corruption, and deceit in the initiative process." In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, ¶ 4, 376 P.3d 250.

ROWE, V.C.J., DISSENTING:
¶1 Today, the Court has reached a fork in the judicial road. We must either follow our precedent and take the difficult step of striking an initiative petition for constitutional infirmities before it is even submitted to the voters. Or we must overrule our precedent in order to permit the initiative petition to move forward--but in doing so, bind ourselves to a new precedent of deferring judgment on these matters until after submission to the voters. The Court's desire to have its cake--by allowing the petition to proceed--and eat it too--by blatantly defying our precedent, confounds good judicial reasoning.
¶2 In the present matter, we are asked to consider whether the proposed initiative petition would violate the non-delegation doctrine, a constitutional principle which prohibits delegation of the authority to determine law and policy to persons or institutions other than the Legislature. See Hill v. American Medical Response, 2018 OK 57, ¶ 33, 423 P.3d 1119, 1131-32. In applying the non-delegation doctrine, we are mindful of the "important distinction between the Legislature adopting a set of fixed standards as law vs. delegating legislative authority to another entity that might promulgate and change those standards on an ongoing basis." Id. ¶ 35, 423 P.3d at 1132. Violations of the non-delegation doctrine occur in the latter circumstance. Id. We have previously held that the non-delegation doctrine "applies to enactments by the people in the same manner it applies to enactments by the Legislature." In re Initiative Petition No. 366, State Question No. 689, 2002 OK 21, ¶ 17, 46 P.3d 123, 129.
¶3 In In re Initiative Petition No. 366, State Question No. 689, 2002 OK 21, 46 P.3d 123, we considered a pre-election challenge to an initiative petition based, in part, on the non-delegation doctrine. The petition at issue in that case designated English as Oklahoma's official language. Id. ¶ 1, 46 P.3d at 125. However, the petition also permitted the use of other languages in state-supported public schools under rules promulgated by the State Board of Education and the State Board of Regents of Higher Education, while failing to provide any direction as to what those rules should have been. Id. ¶ 16, 46 P.3d at 128. We deemed the initiative petition legally insufficient for submission to a vote in part because we found this provision to be an improper delegation of policy-making authority. Id. ¶ 19, 46 P.3d at 129.
¶4 The initiative petition at issue here arguably delegates even greater policy-making authority than Initiative Petition No. 366. This initiative petition would incrementally increase the state minimum wage to fifteen dollars ($15) per hour by 2029, and then, starting in 2030, the minimum wage will increase every year based on the CPI-W, an inflation index published by the U.S. Department of Labor ("USDOL"). This would effectively permit the USDOL to substantially determine our State's minimum wage. More importantly, though, the initiative petition does not provide any set standards that would impose limits on USDOL's ability to impact wages in Oklahoma. The policy implications here also far exceed that of Initiative Petition No. 366, either directly or tangentially affecting every working-age person's income. The majority has chosen to ignore these very real non-delegation issues and permit the petition to proceed to a vote of the people.
¶5 I recognize and appreciate our constitutional underpinnings of reserving in the people the right of initiative petition, and I am opposed to this Court serving as a pre-election gate-keeper on this fundamental right, regardless of the political winds for or against a given initiative petition. The power to make law directly is a fundamental right of the people of Oklahoma. Oklahoma Independent Petroleum Association v. Potts, 2018 OK 24, ¶3, 414 P.3d 351, 361 (Wyrick J., concurring). Article II, Section 1 of the Oklahoma Constitution makes clear that all political power is derived from the people.[1] When the people of Oklahoma established their government, they endowed the branches of government with various powers, but the people reserved certain powers for themselves. Potts, 2018 OK 24, ¶ 3, 414 P.3d at 361 (Wyrick J. concurring). Among the powers the people retained for themselves is the right of initiative petition. Id. Specifically, Okla. Const. art. V, § 1 states:
The Legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature.
As Justice Wyrick pointed out in Potts, because the initiative power is not conferred on the people by the Constitution, the Constitution does not define the scope of that power but rather sets out what limitations, if any, the people chose to place on the initiative power. Potts, 2018 OK 24, ¶ 5, 414 P.3d at 362 (Wyrick J. concurring).
¶6 Still yet, the Legislature vested this Court by statute with pre-election jurisdiction to weigh upon the constitutionality of initiative petitions,[2] and our extant jurisprudence is clear that we scrutinize initiative petitions for violations of the non-delegation doctrine just the same as we would actions of the Legislature. In re Initiative Petition No. 366, 2002 OK 21, ¶ 17, 46 P.3d at 129. If the Majority wishes to explicitly overrule our precedent--and adopt a jurisprudence of pre-election non-intervention in these matters going forward--I would find that outcome more intellectually defensible. However, permitting this petition to move forward in spite of what appear to be clear constitutional infirmities stands to weaken our jurisprudence and devalue our precedent going forward. Accordingly, I respectfully dissent.
FOOTNOTES
[1] Article II, Section 1 states, "All political power is inherent in the people; and government is instituted for their protection, security, and benefit, and to promote their general welfare; and they have the right to alter or reform the same whenever the public good may require it: Provided, such change be not repugnant to the Constitution of the United States."
[2] Title 34, Section 8(B) of the Oklahoma Statutes, states:
It shall be the duty of the Secretary of State to cause to be published, in at least one newspaper of general circulation in the state, a notice of such filing and the apparent sufficiency or insufficiency of the petition, and shall include notice that any citizen or citizens of the state may file a protest as to the constitutionality of the petition, by a written notice to the Supreme Court and to the proponent or proponents filing the petition. Any such protest must be filed within ten (10) business days after publication. A copy of the protest shall be filed with the Secretary of State.
 
 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA